**HUDSON RIVER SLOOP CLEAR-WATER, INC., Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION,**
Defendant.

No. 82–CV–1307.

United States District Court,
N.D. New York.

July 2, 1984.

Trial Lawyers for Public Justice, Washington, D.C., E. Stewart Jones, Troy, N.Y., for plaintiff; Anthony Z. Roisman, Susan J. Vogel, Washington, D.C., of Counsel.

John Jenchura, Abbi L. Cohen, Philadelphia, Pa., for defendant.

McNamee, Lochner, Titus & Williams, P.C., Albany, N.Y., Local Counsel for defendant; Earl H. Gallup, Jr., Albany, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

This citizens' suit, brought pursuant to section 505 of the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1365, challenges alleged unremedied violations by defendant Consolidated Rail Corporation ("Conrail") of its National Pollutant Discharge Elimination System/State Pollutant Discharge Elimination System ("NPDES/SPDES") permit in violation of section 301(a) of the FWPCA, 33 U.S.C. § 1311(a). Jurisdiction is predicated upon section 505(a)(1) of the FWPCA, 33 U.S.C. § 1365(a)(1). Before the Court are motions by plaintiff for partial summary judgment on the issue of liability, Fed.R.Civ.P. 56(a), and by defendant to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), and for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), or in the alternative, for summary judgment, Fed.R.Civ.P. 56(b).

### II

Plaintiff, The Hudson River Sloop Clearwater, Inc. ("Clearwater"), is an environmental public interest membership organization incorporated under New York State's not-for-profit corporation laws. Clearwater has approximately 5000 members who reside in New York State. The organization conducts environmental research, monitoring, education and advocacy on behalf of its members. Defendant Conrail is a Pennsylvania corporation operating a diesel locomotive repair and refueling facility in Selkirk, New York.

According to the complaint, Conrail discharges treated wastes from its Selkirk facility through a point source into the Hudson River and the South Albany Creek. These discharges have been controlled since February of 1975 by the terms of defendant's NPDES/SPDES permit issued by the New York Department of Environmental Conservation ("DEC") pursuant to N.Y.Envtl.Conserv.Law §§ 17–0801 to 17–0829.[1]

On September 19, 1979, Conrail signed an "order on consent" with DEC arising out of its permit violations. The order called for an engineering and construction schedule designed to achieve full compliance with permit limitations by December 1, 1982. The order also imposed a $25,000.00 penalty on Conrail, with $5,000.00 payable immediately and the remainder to be suspended once compliance with the order had been effected. Apparently, the order has been modified or amended to allow Conrail to achieve compliance by April 1, 1984, somewhat later than originally anticipated.

On November 23, 1982, after reviewing statutorily mandated reports filed by defendant, see 33 U.S.C. § 1318, and both noting the presence of "a pattern of continuous non-compliance with the [FWPCA] ...," Complaint, ¶ 16, and perceiving the absence of any diligent prosecution of defendant by federal or state authorities, plaintiff commenced this action. Prior to filing the complaint, and pursuant to section 505(b) of the FWPCA, 33 U.S.C. § 1365(b), plaintiff, on September 17, 1982, notified Conrail, the EPA and DEC of defendant's continuous violations of its NPDES/SPDES permit and of its intention to sue Conrail unless within sixty days, see

---

1. The New York Department of Environmental Conservation has been authorized to issue such permits by the Administrator of the Environmental Protection Agency ("EPA") pursuant to sections 402(a), (b) of the FWPCA, 33 U.S.C. §§ 1342(a), (b).

33 U.S.C. § 1365(b)(2), action was taken to redress the identified problems. In its notice letter, plaintiff pointed to over 514 violations of the Conrail permit occurring in the preceding five-year period.

Based on Conrail's alleged violations, plaintiff seeks, *inter alia,* an injunction prohibiting Conrail from operating its Selkirk facility in such a manner as will result in further permit violations, as well as imposition of civil penalties of $10,000.00 for each day of each violation, 33 U.S.C. §§ 1319(d), 1365(a). Defendant has moved to dismiss the instant complaint, or in the alternative, for summary judgment, contending both that plaintiff lacks standing and that it has failed to state a claim upon which relief can be granted. Moreover, Conrail argues that the Court lacks subject matter jurisdiction. Plaintiff has cross-moved for partial summary judgment to establish Conrail's liability for its permit violations.

### III

The citizen suit provision embodied in section 505 of the FWPCA provides, in relevant part:

(a) Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—

(1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation

....

.  .  .  .  .

(b) No action may be commenced—

(1) Under subsection (a)(1) of this section—

(A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecut-

ing a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right....

33 U.S.C. § 1365.

Section 505, Conrail contends, precludes maintenance of the present suit because the consent order entered into with DEC constitutes diligent state prosecution. *See* 33 U.S.C. § 1365(b)(1)(B). While neither party disputes that administrative action undertaken by DEC may be the equivalent of court action within the meaning of the statute, *see, e.g., Baughman v. Bradford Coal Co.,* 592 F.2d 215, 219 (3d Cir.), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), since DEC has the power to impose similar penalties and award injunctive relief otherwise available under the FWPCA, *see Gardeski v. Colonial Sand & Stone Co.,* 501 F.Supp. 1159, 1163 (S.D.N.Y.1980), plaintiff argues that because it did not have a right or opportunity to intervene in the DEC proceeding, *see* 33 U.S.C. § 1365(b)(1)(B), that action does not satisfy the court action element under the statute. Even if the DEC proceeding is deemed to satisfy the court action requirement, plaintiff maintains that the unsatisfactory enforcement history surrounding Conrail's alleged violations precludes a finding of diligent prosecution. *See id.*

Aside from these statutory questions, Conrail raises additional challenges, including the contention that plaintiff is without standing to maintain the present suit and the suggestion that any claims are time-barred by what is asserted to be the applicable statute of limitations. Finally, defendant urges that no viable claim is raised here because neither additional penalties nor injunctive relief is "appropriate."

#### A. *Standing*

As a threshold matter, the Court is constrained to address the challenge to Clearwater's standing, since it is now a familiar requirement that those who seek

to invoke the jurisdiction of the federal courts must satisfy the prerequisite imposed by article III of the Constitution by alleging an actual case or controversy. *Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–53, 20 L.Ed.2d 947 (1968). A plaintiff must allege " 'such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975) (emphasis in original) (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). The plaintiff must suffer a concrete, personal injury as a result of the acts which he challenges. 422 U.S. at 508, 95 S.Ct. at 2210.

■ Conrail concedes that an organization whose members are injured may represent those members in a proceeding for judicial review, *see Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1971), but argues that mere allegations that an organization's members have suffered injuries to their aesthetic, conservational, recreational or economic interests, without factual support, are wholly insufficient to confer standing to sue under section 505 of the FWPCA. There is no question that as a pleading matter, plaintiffs have satisfied the requirements of *Sierra Club v. Morton,* 405 U.S. at 731–41, 92 S.Ct. at 1364–1369. *See generally Sierra Club v. The Aluminum Company of America,* 585 F.Supp. 842 (N.D.N.Y.1984). Paragraph seven of plaintiff's complaint alleges that:

> Members of Clearwater reside in New York State, particularly in the Hudson River Valley, in the vicinity of the Hudson River and South Albany Creek, or own property or recreate in, on or near the Hudson River and South Albany Creek. The quality of the nation's waters and the waters of New York State directly affects the health, economic, recreational, aesthetic and environmental interests of Clearwater's membership. The interests of Clearwater's members

have been, are being and will be adversely affected by Defendant Conrail's failure to comply with its NPDES/SPDES permit requirements.

Complaint, ¶ 7. Defendant, however, relying on the recent decision of Judge Telesca in *Sierra Club v. SCM Corp.,* 580 F.Supp. 862 (W.D.N.Y.1984) (appeal pending), suggests that plaintiff's reliance on generalized injuries to its membership is insufficient to confer standing. Holding that injury will not be presumed from conclusory allegations, Judge Telesca noted that while plaintiff had "adequately tracked the language in *Morton* and allege[d] a *specific* injury to its members[,] [it had] completely failed to present any factual support for these allegations . . . ." *Id.* at 865 (emphasis in original).

Without assessing the correctness of Judge Telesca's decision in *SCM,* suffice it to note that the present case is sufficiently distinguishable. Although the allegations contained in Sierra Club's and Clearwater's complaints are nearly identical, Clearwater, in response to the present motion, has come forward with that evidence which Judge Telesca found to be lacking. Specifically, plaintiff has proffered the affidavits of two of its members, Robert Rienow and Richard Endreny, both of which set forth in precise terms the specific adverse affects they have suffered. Accordingly, this Court is not faced with presuming injury from conclusory allegations and finds little difficulty concluding that defendant's standing challenge is without merit.

### B. *Effect of the DEC proceeding*

#### 1. *Administrative action as court action*

There is no question, and the parties do not disagree, that DEC's administrative proceedings may, as a general proposition, be deemed the equivalent of state court action under 33 U.S.C. § 1365(b)(1)(B). *See generally Baughman v. Bradford Coal Co.,* 592 F.2d 215, 219 (3d Cir.), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979). Because DEC is empowered to impose civil penalties on violators in amounts up to $10,000.00 a day,

N.Y.Envtl.Conserv.Law § 71–1929 (McKinney Supp.1983–1984), to seek criminal penalties, *id.* § 71–1933, and to require the Attorney General to seek injunctive relief, *id.* § 71–1931 (McKinney 1973), its actions have generally been found to represent the statutory equivalent of court action. *See Love v. New York State Department of Environmental Conservation,* 529 F.Supp. 832, 844 (S.D.N.Y.1981); *Gardeski v. Colonial Sand & Stone Co.,* 501 F.Supp. 1159, 1162–63 (S.D.N.Y.1980). Plaintiff argues, however, that administrative action will not constitute state court action absent an opportunity or right of citizens to intervene in that proceeding. *See* 33 U.S.C. § 1365(b)(1)(B) ("but in any such action in a court of the United States any citizen may intervene as a matter of right"). Plaintiff points to the most recent cases interpreting § 1365(b)(1)(B) which have routinely held that where citizens have not had an opportunity to intervene in agency enforcement actions, subsequent citizen suits are not barred. *See Sierra Club v. SCM Corp.,* 572 F.Supp. 828 (W.D.N.Y.1983) (subsequently dismissed on standing grounds; appeal pending); *Student Public Interest Research Group v. Fritzsche, Dodge & Olcott, Inc.,* 579 F.Supp. 1528 (D.N.J.1984) (interlocutory appeal pending); *Student Public Interest Research Group v. Monsanto Co.,* No. 83–2040 (D.N.J. Dec. 6, 1983). In *Sierra Club v. SCM Corp.,* Judge Telesca held that

> where settlement of permit violations is achieved as a result of enforcement proceedings in which plaintiffs, as interested members of the public, lacked the opportunity to be heard on the merits of the proposed consent order, a citizens suit pursuant to 33 U.S.C. § 1365(a)(1) may properly be entertained by a federal court.[2]

572 F.Supp. at 831 (footnote omitted). Similarly, in *Student Public Interest Research Group v. Fritzsche, Dodge & Olcott, Inc.,* 579 F.Supp. 1528 (D.N.J.1984), the court

concluded that "where the EPA fails to allow participation by citizen groups in its enforcement proceedings it will not be accorded 'court status' and therefore plaintiffs can maintain their suit." At 1534.

Conrail argues that the *SCM* decision is erroneous in light of the decisions in *Baughman v. Bradford Coal Co.,* 592 F.2d 215 (3d Cir.), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), *Love v. New York State Department of Environmental Conservation,* 529 F.Supp. 832 (S.D.N.Y.1981) and *Gardeski v. Colonial Sand & Stone Co.,* 501 F.Supp. 1159 (S.D.N.Y.1980), because those earlier decisions, in particular, *Gardeski* and *Love* had already held DEC action does in fact constitute court action. Defendant's reading of those cases, however, appears to be incomplete, since each one stressed the importance of the citizen's right to intervene. *See Love,* 529 F.Supp. at 844; *Gardeski,* 501 F.Supp. at 1168.

Based on these five cases alone, it would seem to be the rule that, absent a right of or opportunity for intervention, citizens are not precluded from initiating independent suits. This Court declines to adopt such a view, however, based on the clear wording of § 1365(b)(1)(B).

In all candor, the Court is puzzled by the above-cited decisions inasmuch as the results reached by those courts seems not to be indicated by the language of the statute itself.

▪ Significantly, the section provides that "in any such action *in a court of the United States* any citizen may intervene as a matter of right." (emphasis added). There can be no question that while the statute contemplates citizen suit preclusion by diligent state or federal prosecution in a federal *or* state court, a right of intervention is accorded under the statute *only* in federal court actions. With all due respect to those courts which have held a right of

---

2. Judge Telesca did not find it necessary to reach the question of what constitutes diligent prosecution within the meaning of the statute. He concluded that denying citizens an opportunity to participate in the merits of the consent order was sufficient to hold that a citizens' suit was not precluded. 572 F.Supp. at 831 n. 3.

intervention to be a mandatory prerequisite to affording preclusive effect to administrative proceedings, this Court refuses to read into the statute language which simply is not there.

"As with any case involving statutory interpretation, 'we state once again the obvious when we note that, in determining the scope of a statute, one is to look first at its language.'" *North Dakota v. United States*, 460 U.S. 300, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983) (quoting *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 103 S.Ct. 986, 990, 74 L.Ed.2d 845 (1983)). "Absent a *clearly expressed* legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (emphasis added). Because § 1365(b)(1)(B) unambiguously mandates allowance of intervention as of right only in federal court actions, see Baughman v. Bradford Coal Co., 592 F.2d at 219; *Sewerage Commission v. Wisconsin Department of Natural Resources*, 104 Wis.2d 182, 186, 311 N.W.2d 677, 681–82 (Wis.Ct.App.1981), the Court finds no merit to plaintiff's contention.

■ Conceding that the legislative history surrounding the passage of the FWPCA manifests an unquestionable concern that citizens *generally* be afforded an opportunity to participate in and supplement the available enforcement scheme,[3] there is absent any "clearly expressed legislative intention" that citizen intervention be required in other than federal court actions. Indeed, any such inference is belied by the wording of § 1365(b)(1)(B) and the familiar maxim *expressio unius est exclusio alterius*. While Congress apparently had no

qualms with respect to requiring intervention in federal court actions, it seems to have determined that interference with state court enforcement proceedings was either unwarranted or injudicious. In any event, this Court is bound by the clearly expressed mandate of § 1365. Accordingly, the Court concludes that the absence of an opportunity for intervention in state proceedings, by itself, does not automatically entitle plaintiff to avoid the statute's mandatory preference for administrative, rather than private citizen enforcement action.

### 2. *Diligent prosecution*

■ On its face, § 1365(b)(1)(B) suggests a requirement that state court action must represent "diligent prosecution" of any violations. Conrail contends that DEC's enforcement action culminating in the consent order constitutes such diligent prosecution and thereby serves to bar plaintiff's action. Plaintiff, on the other hand, argues that both the content and enforcement of the consent order were not sufficient to address Conrail's numerous and serious violations.

Unfortunately, little judicial guidance exists as to what constitutes diligent prosecution under § 1365(b)(1)(B). *Gardeski v. Colonial Sand & Stone Co.*, 501 F.Supp. 1159, 1164 (S.D.N.Y.1980). "Ordinarily, a consent order should be viewed as sufficient in itself to satisfy the requirement of diligent prosecution," *Sierra Club v. SCM Corp.*, 572 F.Supp. 828, 831 n. 3 (W.D.N.Y. 1983), since "[t]o require an agency to commence any form of proceeding would be senseless where the agency has already succeeded in obtaining the respondent's agreement to comply with the law in some

3. For example, the Senate Report on the FWPCA noted that:
A high degree of informed public participation in the control process is essential to the accomplishment of the objectives we seek—a restored and protected natural environment .... [T]he manner in which these measures are implemented will depend, to a great extent, upon the pressures and persistence which an interested public can exert upon the

governmental process. The Environmental Protection Agency and the State should actively encourage and assist the involvement and participation of the public in the process of setting water quality requirements and in their subsequent implementation and enforcement S.Rep. No. 414, 92d Cong., 1st Sess. 1430 (1971), U.S.Code Cong. & Admin.News 1972, p. 3668.

enforceable form." *Gardeski,* 501 F.Supp. at 1166.

In light of the consent order entered into between DEC and Conrail, plaintiff has endeavored to point out in meticulous detail the shortcomings it hopes to expose in DEC's enforcement strategy. Because a determination of diligent prosecution "must rest at least in part ... on the agency's enforcement record," *Gardeski,* 501 F.Supp. at 1164, plaintiff urges the Court to note the inadequacies of DEC's approach and recognize the need for supplementary citizen action. While DEC's remedial steps may not represent the paragon of conservationism to which plaintiff aspires, this Court is unwilling to find DEC's efforts to totally unsatisfactory as to be deemed to amount to less than diligent prosecution. While plaintiff is to be commended for its zealous efforts to preserve for the American public the integrity of our natural resources, the Court finds DEC's efforts likely to achieve that same goal and therefore concludes that the present suit is superfluous.[4]

The thrust of plaintiff's challenge to the sufficiency of DEC's response is twofold: First, plaintiff argues that the enforcement method chosen by DEC was, from the outset, woefully inadequate to deal with the magnitude of Conrail's pollution, particularly since the penalties imposed were relatively insignificant. Second, plaintiff contends that DEC's efforts at enforcing its own order have been ineffectual, permitting Conrail substantial delay in its efforts to achieve compliance.[5] While DEC may not have imposed the Draconian measures plaintiff would like to have seen, it is clear that, on balance, DEC's efforts were sufficient to vindicate the purposes of section 505 by forcing Conrail into compliance with its NPDES/SPDES permit.

By focusing almost exclusively on the penal element alleged to be lacking in DEC's enforcement approach, plaintiff has misapprehended the underlying purposes of the FWPCA. Certainly, while imposition of fines plays an important role in enforcement of the FWPCA, the fact that substantial penalties are not imposed does not, as plaintiff contends, lead to the inexorable conclusion that prosecution has been less than diligent. If permit compliance may be achieved without the imposition of such penalties, the goals of the FWPCA (and presumably plaintiff) will have been realized, and further citizen action will not be necessary. *See United States v. Cargill, Inc.,* 508 F.Supp. 734, 737 (D.Del.1981) (purpose of the FWPCA was to "restore and maintain the purity of the nation's waters and eventually to eliminate the discharge of all pollutants into them...."). While payment of fines as penance for past violations may serve valid purposes and deter further wrongdoing by present and

---

4. The Court is not unmindful of "the spirit in which such suits were authorized by Congress." *Gardeski v. Colonial Sand & Stone Co.,* 501 F.Supp. 1159, 1167 (S.D.N.Y.1980). In enacting a parallel citizen suit provision of the Clean Air Act, "Congress made clear that citizen groups are not to be treated as nuisances or troublemakers but rather as welcomed participants in the vindication of environmental interests .... Thus, the Act seeks to encourage citizen participation rather than to treat it as curiosity or a theoretical remedy." *Friends of the Earth v. Carey,* 535 F.2d 165, 172 (2d Cir.1976), *cert. denied,* 434 U.S. 902, 98 S.Ct. 296, 54 L.Ed.2d 188 (1977). While the Court concurs in the congressional recognition that citizen suits may provide an indispensable element in the protection of our environment, it is constrained to hold that here, in light of DEC's adequate handling of defendant's violations, no such citizen participation is either necessary or desirable.

5. Plaintiff also argues that even assuming DEC's prosecution of Conrail may be deemed diligent with respect to violations preceding the consent order, there has been no prosecution of post consent order violations. While it is true that DEC has not pursued prosecution of violations occurring after September of 1979, it is clear that the consent order contemplated such future violations. The aim of that order was not simply to penalize Conrail for isolated past violations, but rather to encourage, indeed, require satisfactory abatement within a certain time frame. To the extent the consent order has brought Conrail into eventual compliance with its NPDES/SPDES permit, it is irrelevant that certain post order violations have not been the subject of independent prosecution.

future violators, this Court refuses to hold that severe monetary penalties are a prerequisite to a finding that agency action has represented diligent prosecution. As long as pollution is abated to a point consistent with a violator's permit as a result of agency action, additional penalties will not necessarily be required. While the imposition of more onerous financial penalties would no doubt further penalize Conrail for its environmental transgressions, it will not necessarily result in cleaner water. If, of course, Conrail proves to be incorrigible and chooses to neglect its responsibilities under the consent order, then further sanctions would obviously be required. At this point, however, the Court finds no basis to punish Conrail for its demonstrated efforts at achieving compliance. While those efforts may have been, as plaintiff has characterized them, less than enthusiastic, it is sufficient that they were undertaken and their aim realized. The fact that DEC precipitated Conrail's construction of a $2 million treatment facility is sufficient support for the conclusion that prosecution has been diligent.

Plaintiff's challenge to DEC's overseeing of the consent order is likewise unpersuasive. First, it is important to note that "[a]gency enforcement policy, when it is reasonable in light of the difficulties posed by a given set of circumstances, should be protected from disruption by private efforts." *Gardeski v. Colonial Sand & Stone Co.,* 501 F.Supp. 1159, 1167 (S.D.N.Y.1980). Second, while the parties do not dispute that compliance with the order has been long in coming,[6] the Court is satisfied that the essential inquiry is more properly addressed to the *results* of DEC's actions. Counsel for Conrail represented to the Court at oral argument that the $2 million capital project contemplated by the consent decree has now been completed. Significantly, plaintiff has not challenged the adequacy of that project to deal with Conrail's permit violations.[7] Indeed, there is no evidence before the Court that that expenditure will not effect total or substantial compliance with Conrail's permit limitations. The basis of plaintiff's attack centers upon what is alleged to have been DEC's desultory approach to implementation of the terms of the consent order. While the unfortunate history of Conrail's response to environmental problems manifests, from an environmentalist viewpoint, a less than enthusiastic gait, and while DEC's enforcement efforts appear to have been properly characterized as little more than sluggish, the Court is nonetheless satisfied that the present suit now serves no useful purpose. Had compliance with the consent order remained only a distant hope on the part of DEC and had the prospect of continuing violations loomed ominous, the Court would have no reservations in finding DEC's prosecution to have been inadequate. That, however, is not the case here. No longer is Conrail failing to abide by the terms of its consent order and no longer is DEC's enforcement of that order susceptible to criticism. While more vigorous action by DEC may have achieved compliance somewhat more quickly, the fact of the matter is that compliance has now been achieved. Unless Conrail may be said to be engaging in further permit violations, or

6. The parties do, however, sharply disagree over who in fact is responsible for the protracted delays. While plaintiff alleges that defendant has dragged its feet throughout and has sought to forestall compliance for as long as possible, Conrail paints an entirely different canvass and attributes any delays to DEC. Were the Court to find these delays to be of any ultimate significance, it would of course be irrelevant to define the responsible party. If Conrail sought and achieved any meaningful delay and DEC failed to intercede, prosecution could hardly be found to be diligent. Similarly, if DEC was itself to blame for a failure to assure timely compliance, the Court would also be constrained to find a lack of diligent prosecution.

7. Paragraph 11 of the affidavit of plaintiff's expert, Bruce Bell, is simply insufficient to establish that Conrail's project will not bring permit violations under control. Indeed, the statement provides absolutely no support for plaintiff's bare assertion that the completed project will not effect substantial or complete compliance. *A fortiori,* the statement fails to adduce the existence of any disputed issues of material fact warranting denial of Conrail's motion for summary judgment.

unless counsel's representations with respect to completion of the project were inaccurate, DEC's actions have proven effective. If compliance, within reason, is the end, the means chosen to achieve that end are less important, particularly where, as here, that end has been realized. Were the present action permitted to continue, the only additional relief that would be appropriate would be civil penalties. Because the purpose of such fines is only to encourage compliance and because compliance has already been achieved, the justification for such relief is largely eroded. While Conrail obviously has not been penalized as harshly as it might have been, and while DEC has apparently enforced its mandate in less than the severest terms, there should be no mistake that Conrail may not in the future escape more exacting punishment. Should it be demonstrated that the remedy contemplated by the consent order is not effectuated with the vigor heretofore lacking, or if new violations suddenly emerge which do not attract the enforcement attentions of DEC, this Court would not hesitate to entertain favorably a new action based on such additional evidence. Because, however, compliance with the consent order has at last been achieved, the Court is not prepared, on the present record, to find diligent prosecution to be lacking. Accordingly, the instant action is precluded by § 1365(b)(1)(B) and Conrail's motion for summary judgment is granted. It is therefore unnecessary to reach Conrail's statute of limitations defense or the question of Conrail's liability encompassed by plaintiff's motion for summary judgment. Defendant's request for attorneys' fees, 33 U.S.C. § 1365(d), is denied.

It is so Ordered.