**MARYLAND WASTE COALITION, Plaintiff,**

**v.**

**SCM CORPORATION, Defendant.**

**Civ. A. No. R–85–1067.**

United States District Court,
D. Maryland.

Sept. 4, 1985.

---

John F. King and G. Macy Nelson, Baltimore, Md., for plaintiff.

Joseph F. Kaufman, Baltimore, Md., Charles F. Lettow and Elliot E. Polebaum, Washington, D.C., and Samuel Friedman, New York City, for defendant.

RAMSEY, District Judge.

## MEMORANDUM AND ORDER

Plaintiff filed this citizen's suit pursuant to the Clean Air Act, 42 U.S.C. § 7604(a). Currently before the Court is defendant's motion to dismiss complaint or stay proceedings. Plaintiff has opposed defendant's motion and the Court now rules pursuant to Local Rule 6 (D.Md.1985) without need for a hearing.

## I. BACKGROUND

This action, a citizens suit brought by the Maryland Waste Coalition (hereinafter "the Coalition" or "the plaintiff"), is related to the case of *United States v. SCM Corp.*, Civil Action No. R–85–9, which is also pending before this Court.[1] Both actions allege continuing violations of the Clean Air Act by the defendant at its Adrian Joyce Works in Baltimore, Maryland.

The Clean Air Act (hereinafter "the Act"), 42 U.S.C. § 7401 *et seq.*, established programs for pollution control involving state and local governments as well as the EPA. The Act provides, *inter alia*, that the EPA establish primary and secondary "national ambient air quality standards" ("NAAQS") for air pollutants having an adverse impact on public health or welfare.[2] 42 U.S.C. § 7409.

The Act also requires that each state adopt and submit to the EPA a "State Implementation Plan" ("SIP") to attain and maintain the federally promulgated NAAQS. 42 U.S.C. § 7407 and 7410. If the state-adopted SIP satisfies the requirements of the Act, it is approved by the EPA and may, thereafter, be enforced by the state, by the EPA, and, with certain conditions, by private citizens or citizen groups.

If the EPA finds that a person is in violation of a federally approved SIP, the EPA must give notice to both the alleged violator and to the state. If the violation extends beyond the thirtieth day following the required notification, the EPA may order compliance or bring a civil enforcement action. 42 U.S.C. § 7413(a)(1). Such a civil action may be brought in the district court of the United States for the district in which the violation occurred, and the court shall have jurisdiction to restrain the violation, to require compliance, and to assess civil penalties of up to $25,000 per day of violation. 42 U.S.C. § 7413(b).

If a citizen group finds a person in violation of a federally approved SIP, it may give notice of the alleged violation to the EPA, to the state, and to the alleged violator. If neither the EPA nor the state has commenced within sixty days of the notice a civil court action to require compliance with the SIP, the citizen group may bring a civil action against the alleged violator. 42 U.S.C. § 7604. If the EPA or the state has commenced a federal court action within sixty days to require compliance, the citizen group may intervene in that action as a matter of right. 42 U.S.C. § 7604(b)(1)(B).

In 1972, the EPA promulgated primary and secondary NAAQS for particulate mat-

---

1. *United States v. SCM Corporation* is an action brought by the United States on behalf of the Environmental Protection Agency (EPA). The action is sometimes referred to hereinafter as "the EPA suit."

2. Primary NAAQS are those "required to protect the public health;" secondary NAAQS are those "requisite to protect the public welfare." · 42 U.S.C. § 7409(b).

ter and other air pollutants. *See* 40 C.F.R. §§ 50.6, and 50.7. Following the promulgation of these standards, Maryland adopted and the EPA approved a Maryland SIP which is published in the Code of Maryland Regulations (COMAR) and in the Code of Federal Regulations. *See* COMAR 190.18.06; 40 C.F.R. Subpart V §§ 52.1070–52.1117. The Maryland SIP, in pertinent part and with exceptions not here relevant, prohibits the discharge of particulate matter in amounts greater than 0.03 grains per dry standard cubic foot of exhaust gas, COMAR 10.18.06.03B(2)(a) (hereinafter the "particulate-matter standard"), and further prohibits the emission of sulfuric acid mist in a concentration greater than 70 micrograms per cubic meter of exhaust gas. COMAR 10.18.06.05c(2) (the "sulfuric-acid standard"). The Maryland SIP also prohibits the discharge of emissions, other than water in an uncombined form, that are visible to human observers. COMAR 10.18.06.02B (the "visible-emission standard").

The State of Maryland has also enacted air pollution control laws which are codified in Title 2 of Md. Health-Environmental Ann. (1982). Under Maryland law, the state's Department of Health and Mental Hygiene (hereinafter "the Department" or "the state agency") is required to establish state ambient air quality standards identical to the federal standards unless a political subdivision requests a more restrictive standard. § 2–302(c). The Department must also adopt emission standards to attain and maintain the ambient air quality standards. § 2–302(d). The Department may adopt other rules and regulations for the control of air pollution. § 2–301(a).

Under the enforcement provisions of the Maryland law, the Department may issue show cause and corrective orders, §§ 2–602 to 608, or bring enforcement actions in state court to enjoin alleged violations and impose civil penalties. § 2–609(a). The Department may recover in an enforcement action brought in the circuit court for any county up to $10,000 per violation per day.[3] § 2–610(a). All proceedings under the Maryland air quality control law are to be brought by the Department, and "[n]o person other than [the] State acquires actionable rights by virtue of [that law]." § 2–106.

Defendant SCM operates the Adrian Joyce Works in Baltimore, Maryland, at which plant defendant manufactures titanium dioxide, a white pigment used in paint, plastics, paper and other materials.

In May of 1982, the state agency conducted emission tests at defendant's plant. On January 5, 1983, a Notice of Violation and Show Cause Order was issued to defendant by the state agency. The notice alleged, based on the May 1982 tests and observations, that defendant was in violation of the state's particulate-matter, sulfuric-acid, and visible-emission standards. Defendant was informed by that notice of sanctions available under the Health-Environmental Article of the Maryland Code, and was ordered to show cause why a corrective order should not issue. Discussions ensued between the company and the state agency regarding the reliability of the testing procedures and whether defendant's facilities were in fact in compliance with the state standards.

Meanwhile, on April 20, 1984, the EPA issued a Notice of Violation to the defendant company based on tests conducted in December of 1983. The federal notice alleged six violations of the sulfuric-acid and particulate-matter standards in the Maryland SIP which had been federally approved pursuant to the Clean Air Act. The alleged violations concerned the operation of Calcining Kilns No. 2 and 3 at defendant's Adrian Joyce Works. The notice also informed defendant of enforcement actions which could be taken pursuant to the feder-

---

**3.** Compare the provision in the federal Act which provides for civil penalties of up to $25,- 000 per day of violation. 42 U.S.C. § 7413(b).

al Act if the violations continued more than thirty days following the EPA notification.

In December of 1984, the state agency and the company reached an agreement to enter an administrative consent order with regard to the state's notice of violation. The EPA, aware of the agreement, filed suit in this Court against SCM on January 2, 1985. *United States v. SCM*, Civil Action No. R–85–9. The Consent Order between the state agency and the company[4] was executed and effective on January 7, 1985.

The complaint in the EPA suit, predicated upon the federal Notice of Violation issued in April of 1984, alleges that the company has continued to violate the sulfuric-acid and particulate-matter standards in the operation of Kilns No. 2 and 3 for more than thirty days after the issuance of the Notice of Violation. The EPA seeks injunctive relief to compel defendant's compliance with the standards at issue, and further seeks the imposition of civil penalties under the Clean Air Act.[5]

On January 9, 1985, one week after the filing of the EPA suit, the Coalition mailed to SCM, to the EPA, and to state officials a 60-day notice of defendant's alleged violations of the Act's emission standards and limitations. The notice recited hundreds of violations of various standards in the Maryland SIP and included the allegations upon which the EPA suit was premised.

On January 11, 1985, the Coalition filed a motion to intervene in the EPA action. On March 1, 1985, it filed a supplemental motion to intervene which was granted by Memorandum and Order of August 14, 1985.

This action was filed by the Coalition on March 11, 1985. Brought pursuant to the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604, the complaint incorporates by reference the allegations contained in the Coalition's 60-day notice of January 9, 1985. Plaintiff alleges that "neither the EPA or [sic] the State of Maryland has commenced and diligently prosecuted an action in a court of the United States to redress the Violations."[6] Plaintiff seeks (1) a declaration that the defendant has violated the Act; (2) an injunction prohibiting defendant from continuing to violate the Act at its Baltimore plant; (3) an order providing that plaintiff be provided with copies of future reports which defendant may submit to the state or federal government regarding enforcement of the Maryland SIP; and (4) an award of costs and attorney's fees.

Defendant now moves to dismiss the complaint or, alternatively, to stay these proceedings during the performance period prescribed by the state administrative consent order.

## II. DISCUSSION

### A. *The State Administrative Proceedings As a Bar.*

The citizen-suit provision of the Clean Air Act provides, in pertinent part and with exceptions not here relevant, that any person[7] may bring an action to enforce an emission standard, limitation or order under the Act unless the EPA or the state in which the violation occurs "has commenced and is diligently prosecuting a civil action

---

4. The terms of the Consent Order are outlined in *United States v. SCM*, Civil Action No. R–85–9 (Memorandum and Order of August 12, 1985).

5. SCM moved to dismiss or to stay the EPA action on the ground that it was barred by the state administrative consent order under the so-called *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), doctrine. That motion was denied by this Court which held that the doctrine had no applicability to the EPA suit.

*United States v. SCM* (D.Md. Memorandum and Order of August 12, 1985).

6. Complaint, para. 4.

7. "The term 'person' includes an individual, corporation, partnership, association, State, municipality, political subdivision of a State, and any agency, department, or instrumentality of the United States and any officer, agent, or employee thereof." 42 U.S.C. § 7602(e).

in a court of the United States or a State to require compliance with the standard, limitation or order ..." [8] The defendant maintains, in support of its motion, that the state administrative enforcement proceedings which resulted in the entry of an administrative consent order constitute the commencement and diligent prosecution of a civil compliance action so as to bar the instant action. In support of that contention, defendant relies upon *Baughman v. Bradford Coal Co.*, 592 F.2d 215 (3d Cir.), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), and upon *Hudson River Sloop Clearwater, Inc. v. Consolidated Rail Corp.*, 591 F.Supp. 345 (N.D.N.Y. 1984), *aff'd in part and rev'd in part, sub. nom. Friends of the Earth v. Consolidated Rail Corp.*, 768 F.2d 57 (2d Cir.1985).

In *Baughman*, as in the present case, a citizen suit was brought under the Clean Air Act for alleged violations of the federally approved state implementation plan. Prior to the filing of the citizen suit in federal court, a state agency had begun proceedings before Pennsylvania's Environmental Hearing Board seeking civil penalties under state law for the same violations later alleged in the federal citizen suit. After the commencement of the federal action, the state agency and the alleged polluter entered into a consent order which terminated the proceedings before the state Hearing Board.

The defendant in *Baughman*, like SCM in the instant case, argued that the state proceedings before the Hearing Board constituted a "civil action in a court of ... a state to require compliance" so as to bar the subsequent citizen suit. The Third Circuit held that the Pennsylvania Hearing Board was not a "court of ... a State" for purposes of applying 42 U.S.C. § 7604(b)(1)(B), and affirmed the district court's order denying defendant's motion to dismiss.[9]

While holding that the Pennsylvania Hearing Board was not a "court," the Court in *Baughman* suggested that a state administrative board might be deemed a court under § 7604(b)(1)(B) if the state tribunal (1) has "the power to accord relief which is the substantial equivalent to that available to the EPA in federal courts under the Clean Air Act;" [10] and (2) employs procedures which are consistent with the

---

**8.** 42 U.S.C. § 7604(a) provides that

Except as provided in subsection (b) of this section, any person may commence a civil action in his own behalf—

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,

 * * * * * *

The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be. 42 U.S.C. § 7604(b) provides that

No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right.

 * * * * * *

**9.** Because the Third Circuit's decision was based on its finding that the Hearing Board was not a "court of ... a State," it never reached the issue of whether the state penalty proceedings constituted an "action ... to require compliance" or whether the state agency was "diligently prosecuting" those proceedings.

**10.** The relief available to the EPA in federal court under the Clean Air Act includes issuance of temporary or permanent injunctions to restrain violations and require compliance; assessment and recovery of civil penalties of up to $25,000 per day of violation; and collection of noncompliance and nonpayment penalties. 42 U.S.C. §§ 7413 and 7420.

Congressional intent of the citizen suit provision. *Baughman,* 592 F.2d at 219. Because the Pennsylvania Hearing Board lacked the power to enjoin violations of the SIP and could impose *per diem* penalties of only $2,500, it lacked the power to accord relief which is the substantial equivalent of that available to the EPA in federal court.[11] *Id.* And because citizen intervention in the Hearing Board's proceedings was discretionary and not of right, the Court found the state tribunal's procedures deficient.[12] *Id.*

A closely related issue was more recently considered by the Third Circuit in *Student Public Interest Research Group of New Jersey v. Fritzsche, Dodge & Olcott,* 759 F.2d 1131 (3rd Cir.1985). There the Court was presented with the issue of whether the preemption clause in the citizen suit provision of the Clean Water Act, which clause is identical to the preemption clause in the Clean Air Act,[13] precludes a citizen suit to enforce the act where the EPA has already commenced an administrative enforcement proceeding which resulted in a court-enforceable consent order between the EPA and the alleged violator. The Court applied the two-prong inquiry used in *Baughman* and held that the EPA enforcement proceeding could not be characterized as a court action and thus did not preempt the subsequent citizen suit.

Applying the first prong of the *Baughman* test, the Court in *Student Public Interest* found that the EPA administrative proceeding did not possess the power to accord relief substantially equivalent to that available to the EPA in federal court. This is so because the EPA cannot enforce its administrative orders or impose civil penalties without the aid of a federal court. 759 F.2d at 1137–39. With regard to the procedural sufficiency of the administrative proceeding, the Court found the EPA proceedings inadequate because no citizen right to intervene is afforded and because the informal enforcement procedure "embraces none of the procedural safeguards found in federal court proceedings." [14] *Id.* at 1138–9.

In the instant case, defendant argues that under the Third Circuit analysis employed in *Baughman,* this Court should find that the actions of the Maryland Department resulting in the administrative consent order should be deemed in "civil action in a court" so as to preclude this citizen suit. In support of this contention, defendant relies upon *Hudson River Sloop, supra,* 591 F.Supp. 345 (N.D.N.Y.

---

**11.** The *Baughman* Court considered the lack of injunctive power as the more significant deficiency. 592 F.2d at 219.

**12.** The Court declined to decide "whether the lack of citizen intervention of right, alone, is a sufficient basis to find an otherwise competent tribunal not to be a 'court' under § 7604(b)(1)(B)." *Id.* The lack of citizen intervention of right was, however, the only reason offered by the Court for its conclusion that the state Hearing Board's procedures were deficient. *Id.*

**13.** Compare 42 U.S.C. § 7604(b)(1)(B), set out in footnote 8 above, with the comparable provision of the Clean Water Act:

(b) No action may be commenced—

\* \* \* \* \* \*

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right. 33 U.S.C. § 1365(b)(1)(B).

See also *Student Public Interest,* 759 F.2d 1131, 1136 n. 4 and cases cited therein.

**14.** The Court went on to note that

The EPA enforcement process does not incorporate an independent decisionmaker or administrative law judge to weigh the evidence, nor does it allow for opposing parties to present such evidence. In addition, no witnesses are called, no hearing is held, and no formal transcripts or records of decisions are maintained. In short, the EPA's enforcement action bears no procedural similarity at all to a traditional court action. Rather, it consists entirely of private negotiations between the EPA and the discharger—negotiations which are not designed to subsume the procedural protections of the adversarial system.
*Id.* at 1139.

1984), where the District Court held that a citizen suit under the Clean Water Act was barred under the statute by a state administrative action which resulted in a consent order. This Court's research discloses that the decision in *Hudson River Sloop* relied upon by defendant SCM was recently reversed by the Second Circuit in *Friends of the Earth v. Consolidated Rail Corporation,* 768 F.2d 57 (2d Cir.1985).[15]

In *Friends of the Earth,* the Second Circuit discussed the rationale of *Baughman* and its progeny, and the assumption in those opinions that the "action in a court" language in the citizen suit provisions of the Clean Air Act and Clean Water Act could encompass administrative as well as judicial tribunals. That assumption was flatly rejected.[16]

> [W]e decline to adopt the *Baughman* approach. The ... citizen suit provision unambiguously and without qualification refers to an "action in a court of the United States, or a State." [citation omitted] It would be inappropriate to expand this language to include administrative enforcement actions.

*Id.,* at 62. In support of its holding that an administrative proceeding is no bar to a

subsequent citizen suit, the Court relied upon the plain meaning of the statutory language as well as the legislative histories of the Clean Air Act and Clean Water Act.

■■■ This Court agrees with and adopts the Second Circuit position.[17] Congress has demonstrated its ability to provide that administrative as well as judicial proceedings will serve to bar citizen actions. *See, e.g.,* 33 U.S.C. § 1415(g)(2) (citizen suits under Marine Protection, Research, and Sanctuaries Act preempted by certain agency actions as well as by commencement and diligent prosecution of certain court actions). In the absence of such provision in the Clean Air Act, and in the absence of any suggestion in the legislative history that the language of the Act should be given other than its plain meaning, this Court must presume that Congress meant what it said. Accordingly, the Court holds that a citizen suit under the Clean Air Act is not precluded by 42 U.S.C. § 7604(b)(1)(B) unless the EPA or a state has commenced and is diligently prosecuting a civil action *in a court* of the United States or a state.[18] The administrative enforcement actions of the Maryland Department are no bar to the plaintiff's commencement of this action.

---

15. Neither of the parties in the case at bar has directed the Court's attention to the reversal of the *Hudson River Sloop* decision.

16. The Court noted in passing that even if the *Baughman* approach were accepted, the District Court in *Hudson River Sloop* was in error in concluding that the state agency in that case could be deemed a "court." *Friends of the Earth,* at 62.

17. But see *Sierra Club v. Keystone Automotive Painting Co.,* HM–84–4020, Memorandum and Order of June 18, 1985, at 10 (D.Md.1985) (Murray, J.), where it is said, in reliance upon *Baughman,* that "[t]he court recognizes that under certain circumstances an administrative proceeding may be considered the equivalent of court action and thus bar citizen suits ..." The Court went on to hold that the state agency which had initiated administrative proceedings could not be deemed a court for purposes of applying the preemption clause of the citizen suit provision of the Clean Water Act because the agency could obtain injunctive relief only in a court. The Court also found that the state administrative proceeding had not been commenced prior to the filing of the citizen suit.

18. Defendant's argument would fail even if this Court were to adopt the *Baughman* approach upon which defendant relies. Defendant misstates the question posed by the *Baughman* analysis when defendant argues that the relief available to the Maryland Department in Maryland courts is substantially equivalent to that available to the EPA in federal courts. Defendant's Memorandum in Support of Motion to Dismiss at 15–16. As should be evident from the discussion herein of the Third Circuit Approach, the issue under that analysis is whether the administrative tribunal by itself has powers substantially equivalent to the relief available in a federal court in an EPA action. *See Student Public Interest,* 759 F.2d 1131 (powers of agency not substantially equivalent where agency must go to court to enforce orders). It is clear that the state administrative proceedings in this case would not be deemed "a civil action in a court" under the standards applied in *Baughman, Student Public Interest,* and *Sierra Club v. Keystone Automotive.*

**B. *The Colorado River Doctrine As A Bar.***

■ Defendant also argues that this action should be dismissed or stayed pursuant to the doctrine announced in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Defendant's contention in this regard parallels the argument advanced by the same defendant in the case of *United States v. SCM,* Civil Action No. R–85–9, which is currently pending in this court. In both cases, defendant maintains that the federal actions should be dismissed or stayed because of the administrative consent order entered into by the defendant and the state agency.

The *Colorado River* doctrine was discussed at some length in this Court's Memorandum and Order of August 12, 1985, in *United States v. SCM,* Civil Action No. R–85–9. For reasons explained more fully therein, the Court again rejects defendant's contentions and holds that the *Colorado River* doctrine is no bar to the prosecution of this action.

As in *United States v. SCM,* the defendant here has failed to demonstrate beyond "any substantial doubt" the existence of parallel state-court litigation that will be an adequate vehicle for the complete and prompt resolution of the issues between the federal court parties. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 28, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1983). There is no "contemporaneous exercise of concurrent jurisdiction" by state and federal courts. *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246. Nor can the Court find any expression in the Clean Air Act of a congressional intent to allow state administrative actions to preclude enforcement in the federal courts of federal standards.[19]

**C. *The EPA Suit As A Bar To This Action.***

As discussed above, the related EPA action, *United States v. SCM,* is predicated upon the Notice of Violation issued by EPA in April of 1984. That notice alleges six violations of the SIP in December of 1983. The Notice of Violation, and the EPA suit based thereon, allege that Calcining Kilns No. 2 and 3 at defendant's plant are in violation of the SIP's sulfuric-acid and particulate-matter standards. The EPA seeks injunctive relief and the imposition of civil penalties.

Subsequent to the filing of the EPA action, Maryland Waste Coalition filed this action which is predicated upon the Coalition's 60-day letter to the defendant. Plaintiff's complaint does not specify the violations alleged but instead merely "incorporates by reference allegations of SCM's violations of Maryland's SIP as contained in the 60-day letter." Complaint para. 14. The 60-day letter attached to the complaint alleges hundreds of occurrences of violations of Maryland's SIP at defendant's plant. Among the standards alleged to have been violated are the sulfuric-acid and particulate-matter standards. Among the emission sources alleged to be in violation of the standards are Calcining Kilns No. 2 and 3. Plaintiff seeks declaratory and injunctive relief.

As a final argument in support of its motion, defendant argues that portions of plaintiff's complaint should be dismissed because they allege "violations from the same emission source" which is the subject of the earlier filed EPA action against the defendant. Defendant's Memorandum in Support of Motion to Dismiss at 27. Defendant asserts that all claims relating to Calcining Kilns Nos. 2 and 3 should be dismissed because those kilns and the sub-

---

**19.** To the extent that defendant would find such congressional intent in the general scheme of the Clean Air Act, its contention is rejected for the reasons given in *United States v. SCM.* To the extent that defendant argues that the Act's citizen suit provision, 42 U.S.C. § 7604, evidences such an intent, the Court relies upon its holding *supra,* in Section II–B, that Congress intended that only civil court actions, not administrative proceedings, would preempt citizen suits under the Act.

ject of the earlier EPA action. Plaintiff, in response, contends that the EPA suit is no bar to this action because the EPA complaint cites only six violations while the Coalition's "cites more than 275 violators." Plaintiff's Memorandum in Support of its Opposition to Defendant's motion at 11.

The preemption clause of the citizen suit provision, discussed above with regard to the question of the preclusive effect of the state administrative proceeding, provides that a citizen suit may not be maintained if the EPA "has commenced and is diligently prosecuting a civil action in a court of the United States ... to require compliance with the standard, limitation or order." [20] Since the EPA action was earlier filed and seeks to require compliance with at least some of the standards and limitations that are the subject of this suit, it is clear that the preemption clause in § 7604(b)(1)(B) has some applicability.[21] It remains for the Court, however, to determine the scope of the statutory preclusion. Neither of the parties has cited, nor has the Court's research disclosed, any decision which would be dispositive of this issue.

Defendant argues that plaintiff's action is barred to the extent that it alleges violations at Calcining Kilns No. 2 and 3 since those are the emission sources that are the subject of the EPA suit. Defendant would thus measure the scope of the statutory preclusion only by the source of the emission.

■ Defendant's position is patently untenable. The clear intent of the citizen suit provision is to provide for private enforcement of standards, limitations and orders which state and federal authorities have declined to enforce. In a situation where a single emission source violates multiple standards, limitations or orders, it would defeat the purpose of the citizen suit provision to hold that EPA's enforcement of a single standard against the emission source would bar private enforcement of other standards, limitations or orders applicable to the same emission source. The intent of the preemption clause is to bar private actions seeking to force compliance with the *same standards, limitations or orders* which are already the subject of state or federal compliance actions.

Plaintiff apparently contends that only the specific incidents of violation relied upon by EPA in its suit are preempted. Because the EPA notice of violation and complaint concern violations of particulate-matter and sulfuric-acid standards at Kilns No. 2 and 3 in December of 1983, it appears to be plaintiff's position that the present suit may proceed on the basis of allegations that the same sources violated the same standards on other occasions.

■ Plaintiff's contentions must also be rejected. As noted above, the purpose of the Clean Air Act's citizen suit provision is to allow private parties to compel compliance with standards which the EPA and the States are not enforcing. If the EPA has discovered a violation of a standard and has brought a civil action to compel compliance with that standard, a subsequent private action against the alleged violator seeking compliance by the same source with the same standard is wholly redundant and adds nothing to the statutory enforcement scheme even though the private suit alleges past violations on occasions different than those relied upon by the EPA in its suit. Such a private action is wholly redundant because it seeks only an injunction against the polluter compelling compliance with the standard, i.e. prospective relief which is identical to that prayed in the earlier EPA action. Accordingly, it is barred by the preemption clause of 42 U.S.C. § 7604(b)(1)(B).

**20.** 42 U.S.C. § 7604(b)(1)(B) set out in footnote 8 above.

**21.** The plaintiff in this action has not suggested that the EPA is not diligently prosecuting its suit against SCM.

■ Under the facts of this case,[22] the Court holds that § 7604(b)(1)(B) bars the prosecution of this action to the extent that compliance is sought with the same standards at the same emission sources which are the subject of the earlier commenced EPA suit. Thus, plaintiff's action is preempted to the extent that it alleges violations of the particulate-matter and sulfuric-acid standards at Calcining Kilns No. 2 and 3.

Plaintiff shall have twenty days to amend its complaint in accordance with this decision.[23] Defendant shall have twenty days thereafter to file its answer to the amended complaint.

For the reasons stated herein, it is this 4th day of September, 1985, by the United States District Court for the District of Maryland,

ORDERED:

1. That defendant's motion to dismiss complaint or to stay proceedings is GRANTED IN PART and DENIED IN PART;

2. That plaintiff's complaint is dismissed to the extent that it alleges violations of the sulfuric-acid and particulate-matter standards at Calcining Kilns Nos. 2 and 3 at defendant's plant;

3. That plaintiff shall file within twenty days an amended complaint in accordance with this Memorandum and Order;

4. That defendant shall answer or otherwise respond to the amended complaint within twenty days of its service;

5. That the Clerk of the Court shall mail copies of this Memorandum and Order to all counsel of record in this action and in *United States v. SCM Corp.*, Civil Action No. R–85–9.

---

**22.** The Court's decision is necessarily limited to the situation presented. A different question might be presented if the Clean Air Act authorized citizen suits to assess civil penalties since such penalties are determined "per day of violation." 42 U.S.C. § 7413(b). But in a citizen suit under the Clean Air Act, the Court's jurisdiction is limited "to enforc[ing] ... an emission standard or limitation ... or to order the Administrator to perform such act or duty, as the case may be." 42 U.S.C. § 7604(a). This provision may be contrasted to the citizen suit provision of the Clean Water Act pursuant to which a district court also has jurisdiction "to apply any appropriate civil penalties." 33 U.S.C. § 1365(a). *See also People of the State of Illinois v. Commonwealth of Edison Co.*, 490 F.Supp. 1145, 1150–1 (N.D.Ill.1980) (citizen suit provision of Clean Air Act does not encompass civil penalties).

In any event, the plaintiff in this action has not sought the imposition of civil penalties against the defendant and the Court need not decide the scope of the § 7604(b)(1)(B) preclusion where such relief has been prayed. The holding herein is also limited to the situation where the earlier-commenced action by the EPA or a state seeks an order compelling compliance with the standard or limitation at issue. Thus, the Court need not decide whether an EPA or state action which sought only the imposition of civil penalties would constitute the commencement and diligent prosecution of "a civil action ... to require compliance with the standard, limitation or order" which would trigger the preclusion of § 7604(b)(1)(B).

**23.** Plaintiff may not, in its amended complaint, rely solely upon a reference to its 60-day letter in its statement of the claim. Plaintiff should specify in the body of the complaint the violations alleged.