Carl **LUTZ** and Deborah Lutz, et al., Plaintiffs,

v.

**CHROMATEX, INC.,** et al., Defendants.

Civ. No. 88–1764.

United States District Court,
M.D. Pennsylvania.

Oct. 5, 1989.

James R. Ronca, Schmidt & Ronca, P.C., Harrisburg, Pa., Gerald J. Williams, Williams & Cuker, Philadelphia, Pa., for plaintiffs.

John Gerard Whelley, Jr., Wilkes–Barre, Pa., Robert Ufberg, Scranton, Pa., Daniel Segal, Philadelphia, Pa., for defendants Bognet, Inc., and Chromatex, Inc.

David Richman, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Thomas B. Schmidt, III, Pepper, Hamilton & Scheetz, Harrisburg, Pa., for defendant Continental White Cap, Inc.

Ronald J. Worobey, Scranton, Pa., C. George Caudle, Caldwell, Heggie & Helton, Chattanooga, Tenn., for defendants Futura Fabrics Corp., and Rossville Industries, Inc.

Donald W. Stever, New York City, Anthony R. Sherr, Sherr, Joffe & Zuckerman, West Conshohocken, Pa., Robert F. DiUbaldo, New York City, for defendants Alan Ind Shulman, Stanley Siegel, Valmont Group, The Valmont Group, a partnership, Alan Cherenson, and Allsteel, Inc.

## MEMORANDUM

NEALON, District Judge.

Currently before the court are defendants' motions to dismiss plaintiffs' second amended complaint and plaintiffs' motion for leave to file a third amended complaint. For the reasons that follow, defendants' motions will be denied and plaintiffs' motion will be granted.

## BACKGROUND

The complete factual and procedural history of this case is detailed in this court's Memorandum and Order of June 9, 1989 and will not be reiterated here. *See* documents 65 and 66 of record. In its June 9 Order, the court granted in part defendants' motions to dismiss plaintiffs' first amended complaint and directed plaintiffs' to file a second amended complaint. *See* document 66 of record. That complaint was timely submitted on June 29, 1989. *See* document 70 of record.

Before defendants' time for responding to the second amended complaint had elapsed, plaintiffs submitted their motion for leave to file a third amended complaint. *See* documents 75–76 of record. They seek to amend in order to add a tenth cause of action pursuant to Pennsylvania's Hazardous Sites Cleanup Act, 35 P.S. §§ 6020.101–6020.1305 (Supp.1989). Various defendants noted their opposition on July 25, 1989, arguing primarily that plaintiffs' proposed cause of action fails to state a claim upon which relief could be granted. *See* documents 84 and 87 of record. Plaintiffs' filed their reply brief on August 8, 1989. *See* document 94 of record.

In connection with the second amended complaint, defendants again submitted motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on July 13, 1989. *See* documents 78–81 of record. Defendants' primary argument is that a citizen suit pursuant to the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 *et seq.* (hereinafter RCRA) may not be based on provisions of Pennsylvania law because those provisions have not "become effective pursuant to [RCRA]." *See* 42 U.S.C. § 6972(a)(1)(A). Plaintiffs filed a consolidated response to the motion on July 25, 1989. *See* document 85–86 of record. On August 7, 1989, defendants submitted their reply briefs. *See* documents 92–93 of record.

Defendants' motions to dismiss and plaintiffs' motion for leave to file a third amended complaint are now ripe for disposition. The court will address these motions *in seriatim.*

## DISCUSSION

*Motions to Dismiss*

In reviewing a motion to dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). The complaint may be dismissed only if it appears that plaintiffs cannot establish any set of facts in support of their claims which would entitle them to relief. *Truhe v. Rupell,* 641 F.Supp. 57, 58 (M.D.Pa.1985) (Rambo, J.). Because plaintiffs assert several claims against defendants, each claim must be examined *in seriatim* to determine if that claim should withstand a motion to dismiss. *Kuchka v. Kile,* 634 F.Supp. 502, 506 (M.D.Pa.1985) (Nealon, C.J.).

(1) RCRA

Under section 3006 of RCRA, 42 U.S.C. § 6926, a state is authorized to develop a state hazardous waste program. Upon the approval of the Administrator of the EPA, "[s]uch State is authorized to carry out such program in lieu of the Federal program under [subchapter III of Title 42, Chapter 82] in such State and to issue and enforce permits for the storage, treatment, or disposal of hazardous waste...." *Id.* § 6926(b). Pennsylvania received authorization to operate its hazardous waste program in lieu of the federal program effective January 30, 1986. *See* 51 Fed.Reg. 1791 (Jan. 15, 1986) (attached as Exhibit C to document 48 of record).

In its previous Memorandum, the court dismissed portions of plaintiffs' RCRA count based on section 3006(b). The court stated as follows:

With the exception of paragraph 85(e) of Count III in the amended complaint, the violations that plaintiffs allege defendants have committed are found in the applicable subchapter and have thus been superseded by Pennsylvania's state program. *Cf. Thompson v. Thomas,* 680 F.Supp. 1, 3 (D.D.C.1987) ("The EPA has authorized the State of Wisconsin to administer and enforce its own hazardous waste program in lieu of the federal program dealing with hazardous wastes. Thus, the violations which the plaintiff alleges 3M has committed under the federal regulations promulgated under RCRA have been superseded in Wisconsin by the state regulations"). These paragraphs must therefore be dismissed.

*See* document 65 of record, at pp. 31–32. While the court generally allowed plaintiffs

leave to amend "to attempt to correct any and all defects discussed in the Memorandum," *see* document 66 of record, it took "no position as to plaintiffs' ability to cure this defect by simply substituting the state provisions for the corresponding superseded federal statute." *See* document 65 of record, at pp. 33–34.

■ In their second amended complaint, plaintiffs do attempt to save their RCRA claim by substituting alleged violations of Pennsylvania's Solid Waste Management Act, 35 P.S. §§ 6018.101–6018.1003 (hereinafter SWMA), and its applicable regulations for the previously alleged violations of the substantive provisions of RCRA. *See* document 70 of record, at ¶¶ 85–90. In their current motions to dismiss, defendants argue that a RCRA citizen suit may not be based on provisions of Pennsylvania law because those provisions have not "become effective pursuant to [RCRA]." *See* document 81 of record; *see also* 42 U.S.C. § 6972(a)(1)(A) ("any person may commence a civil action on his own behalf ... against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to [chapter 82 of Title 42, *see* 42 U.S.C. §§ 6901–6986]...." 42 U.S.C. § 6972(a). The court must disagree with defendants.

Section 3006 of RCRA is contained in chapter 82. *See* 42 U.S.C. § 6926. It is section 3006 that authorizes states to develop and enforce their own hazardous waste programs and to operate those programs "in lieu of the federal program...." *See id.* § 6926(b) ("Any State which seeks to administer and enforce a hazardous waste program *pursuant to this subchapter* ...") (emphasis added). Thus, as noted in *McClellan v. Ecological Seepage Situation v. Weinberger,* 707 F.Supp. 1182 (E.D. Cal.1988), it is at least arguable that a state statute "could ... have become effective pursuant to RCRA," thus making a citizen suit proper, "if it is part of a state hazardous waste program that has been authorized by EPA under section 3006 of RCRA...." *Id.* at 1190–1191.

The actions taken by the EPA in approving state programs under section 3006 of RCRA bolsters this conclusion. For example, the EPA has adopted the practice of incorporating by reference the requirements of state laws and regulations as "part of the hazardous waste management program under Subtitle C of RCRA ..." upon granting final authorization to the state's hazardous waste management program. *See, e.g.,* 40 C.F.R. §§ 272.1(b), 272.-401(a) (Delaware's program), 272.1351(a) (Montana's program). This practice further supports the argument that Pennsylvania's SWMA and accompanying regulations have "become effective pursuant to" chapter 82.

Moreover, the EPA itself takes the position that a RCRA citizen suit may be brought after a state has received authorization to operate its program in lieu of the federal program. For example, in granting interim authorization to Texas pursuant to section 3006, the EPA responded to a comment regarding the adequacy of the Texas program to provide for public participation in the following manner:

EPA believes that RCRA, the Federal regulations and the Texas application provide for a number of important avenues for public participation in hazardous waste management. Consequently, EPA finds that the Texas program, with its new program commitments, satisfies the Federal requirements in this area.

Under RCRA, Section 7002, any person may commence a civil action on his own behalf against any government instrumentality or any person who is alleged to be in violation of permits, regulations, conditions, etc..... As a result, any person, *whether in an authorized or unauthorized State,* may sue to enforce compliance with statutory and regulatory standards.

*See* 45 Fed.Reg. 85016 (Dec. 24, 1980) (emphasis added).

Similarly, in granting final authorization to Texas, one comment noted that Texas did not have a citizen suit provision in its hazardous waste law. Again, the EPA responded in the following manner:

Citizen suit provisions of RCRA are found in Section 7002(a) (Subtitle G). Section 3006(b) requires that State programs be "equivalent to the federal program under this subtitle." ... Section 3006 is in Subtitle C of RCRA.

EPA cannot require a State to provide for citizen suits as is contained in RCRA. *However, it is EPA's position that the citizen suit provision of RCRA is available to all citizens whether or not a state is authorized.*

*See* 49 Fed.Reg. 48300 (Dec. 12, 1984) (emphasis added); *see also id.* ("EPA retains authority, under Sections 3008 and 7003 of RCRA, to take enforcement actions independent of an authorized State against this facility, where warranted. *Additionally, any person may, under Section 7002 of RCRA, commence a civil action on his own behalf*") (emphasis added).

■ Courts generally show great deference to the interpretation of applicable statutes and regulations given by the agency charged with the administration of a particular program. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Lucas Coal Co. v. Interior Board of Mine Operations Appeals,* 522 F.2d 581, 584 (3d Cir.1975); *Budd Co. v. Occupational Safety and Health Review Commission,* 513 F.2d 201, 204 (3d Cir.1975). Such deference is not absolute, however, and is given only when the interpretation by the agency is reasonable and consistent with the statute and regulations. *Lukens Steel Co. v. Klutznick,* 629 F.2d 881, 886 (3d Cir.1980). In the instant case, the court finds EPA's interpretation to be consistent with its own practice of incorporating by reference the authorized state program as part of subtitle C of RCRA and with the plain language of sections 3006 and 7002 of RCRA. Defendants' motion to dismiss on this basis will therefore be denied.

■ Defendants also argue that plaintiffs cannot allege violation of "open dumping" and hazardous waste disposal regulations simultaneously. *See* document 92 of record, at pp. 2–3; document 93 of record, at pp. 3–4; *see also* document 70 of record, at ¶ 91. This court has previously held that "a claim cannot be made for violations of waste disposal facility regulations and for a violation of the open dumping prohibition." *Fishel v. Westinghouse Electric Corp.,* 617 F.Supp. 1531, 1537–1538 (M.D. Pa.1985) (Caldwell, J.); *see also Coburn v. Sun Chemical Corp.,* 28 Env't Rep. Cas. (BNA) 1665 (E.D.Pa. Nov. 9, 1988) (available on WESTLAW at 1988 WL 120739) ("This definition [of "open dump," *see* 42 U.S.C. § 6903(14)] clearly excludes hazardous waste disposal facilities from consideration as open dumps. Thus, plaintiffs cannot allege on the one hand that Thompson operated a hazardous waste disposal facility without a permit and on the other hand allege that Thompson operated an open dump"). While defendants' argument thus has merit, the court will not rule on the issue at this time "and will only note that the claims cannot be brought simultaneously." *Fishel v. Westinghouse Electric Corp.,* 617 F.Supp. at 1538. Defendants' motion to dismiss will therefore be denied without prejudice. In the event plaintiffs fail to make a proper election by the time this case reaches the summary judgment stage, defendant may reassert the issue at that time. *But see Williams v. Allied Automotive, Autolite Division,* 704 F.Supp. 782, 785–786 (N.D.Ohio 1988) (court denied summary judgment on both open dumping and disposal regulations claims).

■ Defendants' final argument concerning plaintiffs' RCRA count involves paragraph 58 of the second amended complaint, which reads as follows:

58. These chemicals, their congeners, by-products and waste products are and have been discharged into the environment at the Chromatex site by a wide variety of activities, described in greater detail below, which the Chromatex site defendants have carried out over an extended period of time. These activities include, but are not limited to, dumping of chemicals onto the ground, disposing of chemicals into the municipal sewer system, placing chemicals into drains, trenches, and storm drains, maintenance of leaking underground storage tanks

for hazardous waste, improper storage of hazardous chemicals, and emissions of TCE and other chemicals into the air. *See* document 70 of record, at ¶ 58. Defendants argue that RCRA does not govern discharges into drains, sewers, trenches, or storm drains. *See* document 70 of record, at pp. 5–7 (citing *Fishel,* 617 F.Supp. at 1538). The court must again disagree.

In section 1004(27), RCRA excludes from the definition of "solid waste" industrial discharges "which are point sources subject to permits under section 1342 of Title 33 [*i.e.,* the Clean Water Act]...." *See* 42 U.S.C. § 6903(27). Regulations promulgated under the Clean Water Act define "point source" as "any discernible, confined, and discrete conveyance, including, but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container ... from which pollutants are or may be discharged." *See* 40 C.F.R. § 260.10 (1988). While this definition would seem to encompass the sewer system, drains, trenches, and storm drains mentioned in paragraph 58 of the second amended complaint, defendants have not established that any discharges were pursuant to and authorized by a permit under section 402 of the Clean Water Act, 33 U.S.C. § 1342. Thus, the court finds the exclusion contained in section 1004(27) of RCRA to be inapplicable to this case. *See United States v. Allegan Metal Finishing Co.,* 696 F.Supp. 275, 280–281 (W.D.Mich. 1988), *appeal dismissed,* 867 F.2d 611 (6th Cir.1989) ("It is clear that the exclusion enshrined in the definition of solid waste is for those *actual discharges from point sources* which are made pursuant to and authorized by a NPDES permit") (emphasis in original).[1]

**(2) Other Grounds**

Defendants Cherenson, Siegel, and Shulman contend that plaintiffs have not set forth sufficient allegations to maintain a claim against them in their individual ca-

pacities. *See* document 70 of record, at pp. 3–5. These defendants also join with defendant Valmont Group in arguing that the second amended complaint still does not assert an "ongoing" violation. *See id.* Fairly reading plaintiffs' complaint as a whole, however, the court believes that plaintiffs have adequately alleged an ongoing violation against these defendants. *See, e.g.,* document 70 of record, at ¶¶ 41–44, 56, and 90. Defendants' motion to dismiss on this ground will therefore be denied.

*Motion for Leave to Amend*

■ Federal Rule of Civil Procedure 15(a) reads as follows:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed.R.Civ.P. 15(a). As this court stated in *Roche v. E.F. Hutton & Company, Inc.,* 658 F.Supp. 315 (M.D.Pa.1986) (Nealon, C.J.), *aff'd,* 862 F.2d 310 (3d Cir.1988),

> Fed.R.Civ.P. 15(a) is intended to permit the liberal amendment of pleadings, ... and delay alone, absent a showing of undue prejudice or unfair disadvantage to the nonmoving party as a result of the amendment, is an inadequate basis for denying a party leave to amend its pleadings.... Accordingly, "it is well-settled that prejudice to the nonmoving party is the touchstone for the denial of an amendment."

*Id.* at 319 (citations omitted). While defendants in the instant case do argue that the motion to amend should be denied based on

---

1. The court's holding in *Allegan Metal Finishing Co.* apparently was based in part on a misreading of the regulations dealing with the solid waste "point source" exclusion. *Compare* 40 C.F.R. § 261.4(a)(2) comment *with United States*

*v. Allegan Metal Finishing Co.,* 696 F.Supp. at 281 (quoting 40 C.F.R. § 261.4(2)[sic] ). Nevertheless, its conclusion is clearly supported by the plain language of section 1004(27) of RCRA. *See* 42 U.S.C. § 6903(27).

delay and prejudice, they also contend that the motion should be denied based on the substantive merits of the additional claim plaintiffs seek to raise. *See* document 84 of record. Notwithstanding the liberal amendment policies of Rule 15(a), this court does have discretion to deny leave to amend where the proposed amendment would not withstand a motion to dismiss. *See Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.1983), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *Polay v. West Co.,* 629 F.Supp. 899, 901 (E.D.Pa.1986); *see also Coupland v. Commercial Credit Union Insurance Co.,* No. 88–1112 (M.D.Pa. Jan. 17, 1989) (Nealon, J.).

As stated previously, plaintiffs seek leave to amend in order to assert a claim for response costs under Pennsylvania's newly enacted Hazardous Sites Cleanup Act (hereinafter "the Act"), which took effect on December 19, 1988. *See* 35 P.S. § 6020.101–6020.1305 (Supp.1989). Defendants' primary argument in opposition to this motion is that the Act does not afford plaintiffs a private right of action for response costs. Given the recent enactment of the Act, this is an issue of first impression.

Section 702(a) of the Act reads as follows:

A person who is responsible for a release or threatened release of a hazardous substance from a site as specified in section 701 is strictly liable for the following response costs and damages which result from the release or threatened release or to which the release or to which the release or threatened release significantly contributes:

(1) Costs of interim response which are reasonable in light of the information available to the department at the time the interim response action was taken.

(2) Reasonable and necessary or appropriate costs of remedial response incurred by the United States, the Commonwealth or a political subdivision.

(3) Other reasonable and necessary or appropriate costs of response incurred by any other person.

(4) Damages for injury to, destruction of or loss of natural resources within this Commonwealth or belonging to, managed by, controlled by or appertaining to the United States, the Commonwealth or a political subdivision. This paragraph includes the reasonable costs of assessing injury, destruction or loss resulting from such a release.

(5) The cost of a health assessment or health effects study.

*See* 35 P.S. § 6020.702(a). Plaintiffs' request for response costs implicates section 702(a)(3) and (5). *See* document 76 of record, Amended Complaint, at ¶¶ 121–127. More specifically, plaintiffs seek to recover costs for "health assessments and medical surveillance of plaintiffs," "health effect studies of plaintiffs and the population affected by the releases," and response activities alleged in connection with their federal cause of action pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.* (hereinafter CERCLA). *See id.* at ¶ 126; *see also id.* at ¶¶ 65–70.

Two other provisions of the Act are involved in plaintiffs' proposed amendment. Section 507(a) reads as follows:

A responsible person under section 701 or a person who causes a release or threat of a release of a hazardous substance or causes a public nuisance under this act or causes a release or a substantial threat of release of a contaminant which presents a substantial danger to the public health or safety or the environment, or causes a release of a nonhazardous substance pursuant to section 501(g) shall be liable for the response costs and for damages to natural resources. The department, a Commonwealth agency, or a municipality which undertakes to abate a public nuisance under this act or take a response action may recover those response costs and natural resource damages in an action in equity brought before a court of competent jurisdiction. In addition, the [Environmental Hearing Board of the Commonwealth] is given jurisdiction over actions by the department to recover re-

sponse costs and damages to natural resources.

35 P.S. § 6020.507(a). In turn, section 1101 provides that

> [a] release of a hazardous substance or a violation of any provision, regulation, order or response approved by the department under this act shall constitute a public nuisance. Any person allowing such a violation shall be liable for the response costs caused by the release or the violation. The board and any court of competent jurisdiction is hereby given jurisdiction over actions to recover the response costs.

*Id.* § 6020.1101. Plaintiffs argue that sections 702(a) and 1101 "explicitly confer on private persons the ability to recover from responsible persons response costs caused by such conduct." *See* document 94 of record, at p. 4.[2]

The court does not agree that section 702 "literally creates a cause of action for the recovery of [response] costs by the person who sustains them." *See id.* at p. 5. Nowhere does the Act refer to a cause of action based specifically on section 702. To the contrary, the Act consistently refers to civil actions brought only under sections 507 or 1101. *See* 35 P.S. §§ 6020.702(b) ("amounts recoverable in an action under sections 507 and 1101 include interest on the amounts recoverable under [section 702(a)]"), 6020.705(a)–(b) ("A person may seek contribution from a responsible person under section 701, during or following a civil action under section 507 or 1101"). 6020.705(c)(1). When section 702 is discussed, it is merely treated as a listing of available response costs and damages. *See id.* §§ 6020.507(f)(1), 6020.707(c) ("Any person who reaches an agreement pursuant to this section shall be responsible only for that person's proportional share of response costs and damages assessed under section 702"), 6020.709, 6020.904(b). Thus, the language of the Act does not support

the conclusion that section 702 itself provides a private remedy for the recovery of response costs.

Plaintiffs' reliance on federal cases interpreting section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B),[3] is misplaced. Contrary to plaintiffs' suggestion, section 702(a) of the Act and section 107(a) of CERCLA are not "identical." *See* document 94 of record, at p. 5 & n. 6. Section 107(a) of CERCLA begins with the following preface: "Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section...." *See* 42 U.S.C. § 107(a). While section 107(a) of CERCLA has been given a broad interpretation based in part on this opening clause, *see Pinole Point Properties, Inc. v. Bethlehem Steel Corp.*, 596 F.Supp. 283, 288 (N.D.Cal.1984), no such provision is found in section 702 of the Act. Additionally, section 107 and other provisions of CERCLA refer to actions brought under section 107. *See, e.g.,* 42 U.S.C. §§ 9607(a) ("The amounts recoverable in an action under this section shall include interest ..."), 9613(f), (g), (h) ("An action under section 9607 of this title to recover response costs ..."). As stated previously, the Act refers only to civil actions under sections 507 and 1101. Thus, the case law creating a private cause of action under section 107(a) of CERCLA does not compel a similar conclusion in connection with section 702(a) of the Act.

Plaintiffs also contend that they may sue to recover response costs under section 1101 of the Act. *See* document 94 of record, at pp. 4–6; *see also* 35 P.S. § 6020.1101 (text *supra* at p. 16). Unlike section 507, section 1101 is not limited to suits by the Department of Environmental Resources (DER), a Commonwealth agency, or a municipality. Unlike section 702, the Act makes it clear that a civil action may be filed pursuant to section 1101.

---

**2.** Plaintiffs appear to concede that the plain language of section 507 does not authorize a private cause of action for the recovery of response cost. *See* document 94 of record, at pp. 4–6.

**3.** Section 107(a)(4)(B) of CERCLA provides that a responsible party "shall be liable for ... any other necessary costs of response incurred by any other person consistent with the national contingency plan...." *See* 42 U.S.C. § 9607(a)(4)(B).

Thus, the Act contains no generally applicable prohibition against private actions for response costs under section 1101.[4]

Defendants nevertheless argue that plaintiffs' proposed cause of action under the Act would not withstand a motion to dismiss. This argument is based on section 1301(a) of the Act, which provides, in part, as follows:

Notwithstanding the provisions of subsection 505(c) and section 507, an identified and responsible owner or operator of a site with a release or threatened release of a hazardous substance or a contaminant shall not be subject to enforcement orders or the cost recovery provisions of this act, until the department has instituted administrative or judicial enforcement action against the owner or operator under other applicable environmental laws and the owner or operator has failed to comply with or is financially unable to comply with such administrative or judicial enforcement action.

35 P.S. § 6020.1301(a). Nowhere in plaintiffs' proposed cause of action do they allege that DER has instituted an enforcement action against defendants and that defendants have failed to comply with such enforcement action. Defendants therefore contend that plaintiffs have failed to state a claim under the Act.

Plaintiffs respond, however, by arguing that section 1301(a) applies only to cost recovery actions brought by DER or governmental units and not to private actions under section 1101. Specifically, defendants argue as follows:

the language of § 1301 ... refers only to Sections 505(c) and 507 of the Act, which confer the right to bring cost recovery actions on DER and governmental units.... Significantly, it makes no reference whatsoever to 35 P.S. § 6020.702(a), or 35 P.S. § 6020.1101, which define the contours of plaintiffs' proposed amendment. Rather, it refers to, and limits, only department actions which are separate and independent of

private actions. There is nothing unusual or novel about an environmental statute which creates such a dichotomy between governmental and private actions.... Because Section 1301 refers only to governmental actions and excludes reference to private actions, the court must presume that it was meant to apply only to governmental actions.... Such a presumption comports with the Act's plain language, and avoids an interpretation which would place Section 1301 in irreconcilable conflict with Sections 702 and 1101.

*See* document 94 of record, at pp. 11–12 (citations and footnotes omitted). Given the current state of the record, the court must agree with plaintiffs.

Throughout the Act, the General Assembly constantly referred to civil actions pursuant to sections 507 *and* 1101. *See* 35 P.S. §§ 6020.702(b), 6020.705. Thus, the omission of any reference to section 1101 from the introductory phrase of section 1301 cannot be attributed to inadvertence. Indeed, the reminder of section 1301 refers only to the "department." Section 1301(a) provides that, "[i]n the event of noncompliance with such administrative or judicial enforcement action, the provisions of this act may be applied *by the department....*" *Id.* § 6020.1301(a) (emphasis added). It also provides that "[a]n appeal *of the department's enforcement action* shall not serve as a bar that prevents *the department* from applying the provisions of this act....*" *Id.* (emphasis added). Section 1301(b) also refers only to "department action." *See id.* § 6020.1301(b). Finally, sections 505(c) and 507, both of which are mentioned in the introductory phrase of 1301(a), involve departmental response actions as opposed to private response cost actions. *Cf. Fleck v. Timmons*, 374 Pa.Super. 417, 424, 543 A.2d 148, 151–152 (1988).

Moreover, to hold that section 1301(a) applied to private actions under 1101 of the Act would render sections 702(a)(3) and 1101 largely surplusage when coupled with

---

**4.** The court has previously discussed whether plaintiffs have standing to sue for damages for public nuisances. *See* document 65 of record, at pp. 40–42; *see also* document 70 of record, at ¶¶ 103–109.

a literal interpretation of section 1301(a). That is, a private action could not be brought pursuant to section 1101 until DER "instituted administrative or judicial enforcement action against the owner or operator under other applicable environmental laws *and the owner or operator has failed to comply with or is financially unable to comply with such ... action.*" 35 P.S. § 6020.1301(a) (emphasis added). Section 1301 then states that, in the event of noncompliance, "the provisions of this act may be applied *by the department....*" *Id.* (emphasis added). No provision is made for application of the Act by private individuals. Thus, although section 702(a)(3) clearly provides that any person may recover reasonable and necessary or appropriate response costs and section 1101 appears to provide the mechanism by which to do so, section 1301 would prohibit such recovery, both when DER failed to take any action and when DER acted but when the defendant has failed to comply. Such a result could not have been intended by Pennsylvania's General Assembly. *See* 1 Pa.C.S.A. § 1922(1), (2) (General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable and intends the entire statute to be effective).

Defendants do argue that a private individual's response cost interest is protected by the right of intervention granted in section 1111 of the Act. *See* 35 P.S. § 6020.1111 ("A citizen of this Commonwealth having an interest which is or may be adversely affected shall have the right, on his own behalf, without posting bond, to intervene in any proceeding brought under this act"). Under Pennsylvania Rule of Civil Procedure 2327(4), intervention may be permitted if "the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action." Pa.R.C.P. No. 2327(4). If section 1301 were sufficient to block a direct action under section 1101, however, it should be just as effective to block an indirect action pursuant to section 1111. The court will

therefore grant plaintiffs' leave to amend in order to assert a cause of action pursuant to the Act.

In granting plaintiffs' motion to amend, the court in no way intends this Memorandum to be a binding decision on the existence of a private cause of action under section 1101 or the proper relationship between section 702, 1101, and 1301. The procedural posture of the issue and the current state of the record militates against such a decision at the present time. As stated previously, defendants did not comment on the application of section 1101 in their brief in opposition to plaintiffs' motion to amend. Additionally, defendants have not yet had an opportunity to comment on the arguments contained in plaintiffs' reply brief. *See* M.D. Local Rule 401.7. Thus, the court in no way expresses any opinion concerning the potential merit of plaintiffs' claims nor does it seek to foreclose a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Instead, the court simply concludes that plaintiffs' proposed amendment is not clearly frivolous or legally insufficient on its face, *see* 6 C. Wright and A. Miller, *Federal Practice and Procedure: Civil* § 1487, at pp. 432–433 (1971), and that any further consideration of the issues addressed in this Memorandum should await a thoroughly briefed motion to dismiss or motion for summary judgment.

## CONCLUSION

Defendants' motions to dismiss plaintiffs' second amended complaint will be denied. Plaintiffs' motion for leave to file a third amended complaint will be granted. Plaintiffs must file the complaint within twenty (20) days from the date of this Memorandum and Order.

An appropriate Order will enter.