**Phyllis GLAZER and Mothers Organized To Stop Environmental Sins, Plaintiffs,**

**v.**

**AMERICAN ECOLOGY ENVIRONMENTAL SERVICES CORPORATION, f.k.a. Gibraltar Chemical Resources, Inc., et al., Defendants.**

No. 6:94 CV 708.

United States District Court, E.D. Texas, Tyler Division.

June 13, 1995.

Michael Douglas Richardson, Arnold White & Durkee, Austin, TX, for plaintiffs.

Herschel Tracy Crawford, Ramey & Flock, Tyler, TX, Rosemary Sage Moore, Ramey & Flock, Tyler, TX, for defendant.

## MEMORANDUM OPINION

JUSTICE, District Judge.

### I. Background

Plaintiffs, Phyllis Glazer and Mothers Organized to Stop Environmental Sins ("M.O.S.E.S."), filed an original complaint against defendant Gibraltar Chemical Resources, Inc.[1] ("Gibraltar") seeking civil penalties, as well as declaratory and injunctive relief for alleged violations of the Clean Air Act ("CAA"), 42 U.S.C. § 7401 et seq., and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq. Plaintiffs amended their complaint on January 3, 1995. The first amended complaint names two additional defendants: American Ecology Corporation ("AEC") and American Ecology Services Corporation ("AESC").

The first amended complaint contains five claims for relief. The first two claims for relief allege CAA violations. In this regard, plaintiffs allege that the defendants are in violation of numerous provisions of Texas' State Implementation Plan ("SIP"), the New Source Performance Standards ("NSPS"), and the National Emission Standards for Hazardous Air Pollutants ("NESHAP"). Claims for relief three and four allege RCRA violations, wherein plaintiffs claim that the defendants are in violation of various federal and state hazardous waste requirements. In their final claim for relief, the plaintiffs contend that the defendants' operation of a facility in Winona, Texas, creates an imminent and substantial endangerment to health or the environment.

On December 30, 1994, defendant Gibraltar moved for judgment on the pleadings. Attached to the motion were several documents which were not included in the pleadings. Consequently, the parties were notified that the motion for judgment on the pleadings would be treated as a motion for summary judgment, in accordance with Fed. R.Civ.P. 12(c). Order, January 18, 1995. Plaintiffs and defendant Gibraltar were af-forded twenty days to submit evidence in support of their respective positions. In addition to submitting evidence, they presented supplemental briefs concerning the issues. These filings having been made, the issues raised therein are ripe for adjudication.

### II. Summary Judgment Standard

Summary judgment is proper under Fed. R.Civ.P. 56(c), "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law underlying the claims in issue identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When assessing a motion for summary judgment, the court must make all factual inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 975 (5th Cir.1991). Often, summary judgment allows the court to dispose entirely of one or more claims within the case. However, a court may also grant partial summary judgment by identifying any undisputed issues of material fact. Fed.R.Civ.P. 56(d). Such facts are then deemed established for trial. *See Belinsky v. Twentieth Restaurant*, 207 F.Supp. 412 (S.D.N.Y.1962).

### III. Analysis

Defendant Gibraltar raises various alternative grounds for summary judgment, specifically: (1) that plaintiffs' CAA and RCRA claims are precluded by the agreed final judgment in *Texas v. Gibraltar*; (2) that plaintiffs' CAA and RCRA claims are barred, to the extent that they allege wholly past violations; (3) that plaintiffs' claim for relief premised on 42 U.S.C. § 6972(a)(1)(B) is an impermissible collateral attack on a prior permitting decision; (4) that Texas' hazardous waste program may not be enforced un-

---

[1] Gibraltar is now known as American Ecology Environmental Services Corporation ("AEESC").

der RCRA; (5) that Texas' SIP and hazardous waste programs may not be enforced, because they exceed the scope of the CAA and RCRA, respectively; (6) that certain CAA and RCRA claims are barred under the terms of the statutes, in that proper notice was not given; and (7) that the five year statute of limitations bars several of the claims.

## A. Prior State Enforcement Action

Plaintiffs seek to maintain a "citizen suit" against the defendants under the CAA. The CAA provides, in relevant part:

> [A]ny person may commence a civil action on his own behalf (1) against any person ... who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this Act or (B) an order issued by the Administrator or a State with respect to such a standard or limitation....

42 U.S.C. § 7604(a). Additionally, plaintiffs rely on RCRA's citizen suit provision, 42 U.S.C. § 6972(a), to assert jurisdiction. Section 6972(a) states, in relevant part:

> [A]ny person may commence a civil action on his own behalf (1)(A) against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this Act ... or (B) against any person ... including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment....

42 U.S.C. § 6972(a).

■ Congress intended that "citizen groups are not to be treated as nuisances or troublemakers but rather as welcomed participants in the vindication of environmental interests." *See Friends of the Earth v. Carey*, 535 F.2d 165, 172 (2d Cir.1976). Thus, the citizen suit provisions have taken broad steps to facilitate the individual citizen's role in the enforcement of federal environmental statutes. *See Natural Resources Defense Council v. Train*, 510 F.2d 692, 700 (D.C.Cir. 1974). However, as the Supreme Court explained in *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 60–61, 108 S.Ct. 376, 383–384, 98 L.Ed.2d 306 (1987), Congress intended citizen suits to play an "interstitial," rather than "potentially intrusive" role. Hence, a citizen suit is proper when the state and federal authorities have declined to utilize their enforcement authority. *See Arkansas Wildlife Federation v. ICI Americas, Inc.*, 29 F.3d 376, 380 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1094, 130 L.Ed.2d 1062 (1995); *see also Maryland Waste Coalition v. SCM Corp.*, 616 F.Supp. 1474, 1483 (M.D.Md.1985).

Recognizing the obvious danger that unlimited citizen suits would overburden the courts, Congress included various restrictions. *See Friends of the Earth v. Consolidated Rail Corp.*, 768 F.2d 57, 63 (2nd Cir. 1985). For instance, the CAA statutory grant of jurisdiction is limited by section 7604(b)(1)(B), which prohibits the commencement of an action, "if the Administrator or the State has commenced *and* is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order...." 42 U.S.C. § 7604(b)(1)(B) (emphasis added).

Similarly, RCRA limits a plaintiff's right to bring a citizen suit against a defendant in certain circumstances. A citizen may not maintain an action against a defendant under section 6972(a)(1)(A) ("a permit violation" claim), when the "State has commenced and is diligently prosecuting a civil ... action in a court of ... a state to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order." 42 U.S.C. § 6972(b)(1)(B). Moreover, a citizen is prohibited from bringing suit under section 6972(a)(1)(B) ("an imminent and substantial endangerment" claim), when the "State, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment[,] has commenced and

is diligently prosecuting an action under subsection (a)(1)(B)." 42 U.S.C. § 6972(b)(2)(C).

Defendant Gibraltar argues that *Texas v. Gibraltar Chemical Resources, Inc.,* No. 92–2671–CA, litigated in the District Court of Smith County, 241st Judicial District of Texas, bars this citizen suit. To properly analyze this contention, it must be determined whether *Texas v. Gibraltar* was commenced and diligently prosecuted to require compliance with the same CAA standard, limitation, or order and the same RCRA permit, standard, regulation, condition, requirement, prohibition, or order involved in the instant citizen suit. Moreover, it must be determined whether *Texas v. Gibraltar* was an action "under subsection (a)(1)(B)," so as to bar the imminent and substantial endangerment claim.

In order to determine the merit of defendant Gibraltar's contentions, a two-part inquiry is required. *See Conn. Fund for the Environment v. Contract Plating Co., Inc.,* 631 F.Supp. 1291, 1293 (D.Conn.1986). First, it must be ascertained whether an action by the state of Texas was pending in state court on the date this citizen suit was commenced. Examining the undisputed facts in this action, it is clear the state of Texas was actually prosecuting *Texas v. Gibraltar* on the date the plaintiffs filed their original complaint in this action. *Cf.* Plaintiffs' Original Complaint (filed September 4, 1994) *with* Agreed Final Judgment, December 22, 1994, *Texas v. Gibraltar Chemical Resources, Inc.,* No. 92–2671–CA.

This finding does not conclude the first part of the inquiry; it still must be found whether *Texas v. Gibraltar* sought to require compliance with the same CAA standard, limitation, or order, as well as the same RCRA permit, standard, regulation, condition, requirement, or order for the specific violations in question in this civil action. *See Conn. Fund for the Environment v. Contract Plating Co., Inc.,* 631 F.Supp. 1291, 1293 (D.Conn.1986); *see also Maryland Waste Coalition,* 616 F.Supp. at 1483. Further, it must be established whether *Texas v. Gibraltar* was brought pursuant to section 6972(a)(1)(B).

[redacted] In making this determination, a comparison of the pleadings is sufficient. *See Conn. Fund for the Environment,* 631 F.Supp. at 1293. Certainly, Congress did not intend to overburden the courts by requiring protracted litigation regarding the similarities between the state's action and the citizen suit. *See id.*

[redacted] If the discrete CAA standard, limitation, or order and RCRA permit, standard, regulation, condition, requirement, or order in the prior state action are at issue in the citizen suit, then a federal court may lack jurisdiction, depending on the determination of whether there was diligent prosecution.[2] *See Maryland Waste Coalition,* 616 F.Supp. at 1483. When a different CAA standard, limitation, or order, or a different RCRA permit, standard, regulation, condition, requirement, or order is in controversy in the citizen suit, or if a different activity constituting the alleged violation of the CAA standard, limitation, or order, or RCRA permit, standard, regulation, condition, requirement, or order, the federal court has jurisdiction over the citizen suit. *See id.* To conclude otherwise would defeat the purpose of the citizen suit provision, which is to provide a mechanism for a private plaintiff to enforce the CAA and RCRA. *See id.*

[redacted] To the extent the two actions seek compliance with the same CAA standard, limitation, or order, or RCRA permit, standard, regulation, condition, requirement, or order for the same alleged violation, the second part of the inquiry must be conducted, *i.e.,* whether the previous action was diligently prosecuted. But, inasmuch as the citizen suit concerns a different alleged violation, the question of diligent prosecution need not be addressed.

[redacted] A close comparison of the pleadings filed in *Texas v. Gibraltar* and this civil action demonstrates that, in many respects, they each seek to require compliance with the same CAA standards, limitations, or or-

2. The mere inclusion of additional dates of an alleged violation does not suffice to grant jurisdiction. *See Maryland Waste Coalition,* 616 F.Supp. at 1483.

ders, and RCRA permits, standards, regulations, conditions, requirements, or orders. However, the citizen suit additionally addresses other alleged violations of the CAA and RCRA not in question in *Texas v. Gibraltar.*

The first claim for relief in the plaintiffs' first amended complaint identifies violations not alleged in the second amended original petition in *Texas v. Gibraltar,* specifically, those set forth in ¶¶ 46–47, 49, 51–52, 56, 60–70. Plaintiffs' Supplemental Response In Opposition to the Motion for Judgment on the Pleadings ("Plaintiffs' Supplemental Response"), Appendix. The following violations of CAA standards, limitations, or orders were litigated in *Texas v. Gibraltar,* even though some alleged dates of violation were not included in the state court petition: ¶¶ 48, 50, 53–55, 57–59. Plaintiffs' Supplemental Response, Appendix.

None of the alleged violations of NSPS and NESHAPs in the second claim for relief in the plaintiffs' first amended complaint were alleged in the second amended original petition in *Texas v. Gibraltar.* Plaintiffs' Supplemental Response, Appendix.

The violations of RCRA permits, standards, regulations, conditions, requirements, or orders set forth in ¶¶ 77–84 and 87–102 of the third claim for relief in the plaintiffs' first amended complaint were not alleged in *Texas v. Gibraltar.* The following violations of RCRA permits, standards, regulations, conditions, requirements, or orders were litigated in *Texas v. Gibraltar,* even though some alleged dates of violation were not included in the state court petition: ¶¶ 85–86. Plaintiffs' Supplemental Response, Appendix.

None of the alleged violations of 40 C.F.R., parts 262–264, asserted in claim for relief four of the plaintiffs' first amended complaint, ¶¶ 104–105, were identified in the state petition. Plaintiffs' Supplemental Response, Appendix.

Finally, the fifth claim for relief in the plaintiffs' first amended complaint, that is, that defendant Gibraltar's operation of the facility presents a substantial and imminent endangerment to health or the environment under 42 U.S.C. § 6972(a)(1)(B), was not as-

serted in the second amended petition in state court.

Certain of the violations alleged in the plaintiffs' first amended complaint were not identified in any manner in the pleadings of *Texas v. Gibraltar;* as to them, then, no action was pending at the time the above-entitled and numbered civil action was commenced. It follows that section 7604(b)(1)(B) and section 6972(b)(1)(B) are not jurisdictional bars to the citizen suit pertaining to these alleged violations. Moreover, *Texas v. Gibraltar* was not brought pursuant to section 6972(a)(1)(B); accordingly, section 6972(b)(2)(C) is not a jurisdictional bar to claim for relief five.

The agreed final judgment in *Texas v. Gibraltar* purportedly resolves "all matters arising out of facts alleged or which could have been alleged by the State of Texas," as well as "all other known matters that could have been alleged or asserted through the date of signing of this Judgment by the Court." Agreed Final Judgment at 1–2, December 22, 1994, *Texas v. Gibraltar Chemical Resources, Inc.,* No. 92–2671–CA. This extremely broad agreement is not sufficient to support a conclusion that the State of Texas *commenced* a civil action "to require compliance with the [CAA] standard, limitation, or order . . . ," 42 U.S.C. § 7604(b)(1)(B), or a RCRA permit, standard, regulation, condition, requirement, prohibition, or order. 42 U.S.C. § 6972(b)(1)(B). Moreover, this agreed judgment does not support a conclusion that an action was *commenced* under section 6972(a)(1)(B). A civil action was only "commenced" regarding those violations identified in the second amended petition. "The verb 'commence' requires, at a minimum, that the . . . cause of action appear in the complaint." *Zands v. Nelson,* 779 F.Supp. 1254, 1258 (S.D.Cal.1991).

This conclusion is supported by *Dague v. City of Burlington,* 935 F.2d 1343 (2nd Cir. 1991), *rev'd in part on other grounds,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). In *Dague,* the court addressed an "assurance of discontinuance" agreed to by the state and the defendant requiring compliance with certain standards. *Id.* at 1353. This assurance of discontinuance was entered

as an order by a state court. *Id.* Nevertheless, the court held that a subsequent civil action was not barred by the commencement and diligent prosecution provision of the statute. *Id. Dague* is analogous to the situation presented here. In both cases, the state court entered an agreed order. Thus, *Dague*'s conclusion, that a subsequent action is not barred by the agreement entered as an order of the court, suggests that the same conclusion is appropriate concerning those claims not alleged in the pleadings of *Texas v. Gibraltar.*

As stated above, a civil action concerning several of the violations alleged in *Texas v. Gibraltar* was pending at the time this action was commenced. An inquiry must be made, therefore, to determine whether the prior pending action was being diligently prosecuted by the state of Texas at the time that the citizen suit was filed. *See Conn. Fund for the Environment v. Contract Plating Co., Inc.,* 631 F.Supp. 1291, 1293 (D.Conn.1986).

■ Diligence of the state's prosecution should be presumed. *See id.; see also Arkansas Wildlife Federation v. ICI Americas, Inc.,* 842 F.Supp. 1140, 1147 (E.D.Ark.1993), *aff'd* 29 F.3d 376 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1094, 130 L.Ed.2d 1062 (1995). One court has suggested that this presumption may be overcome only with "persuasive evidence that the state has engaged in a pattern of conduct in its prosecution of the defendant that could be considered dilatory, collusive or otherwise in bad faith." *See Conn. Fund for the Environment,* 631 F.Supp. at 1293; *see also Arkansas Wildlife Federation,* 842 F.Supp. at 1147. "The mere fact that the settlement reached in the state action was less burdensome" than the citizen suit plaintiff contemplates does not necessarily compel the conclusion the state failed to diligently prosecute the state action. *See Conn. Fund for the Environment,* 631 F.Supp. at 1294; *see also Arkansas Wildlife Federation,* 29 F.3d at 380.

■ In order to resolve the issue of diligent prosecution of the previous action, primary reliance must be placed on the objective evidence from the state court file. *See Conn. Fund for the Environment,* 631 F.Supp. at 1293. In this action, the evidence submitted by the parties must also be addressed, including deposition testimony which bears upon this issue.

It is found that the plaintiffs have not had an adequate opportunity to develop their evidence in response to the motion for summary judgment. Therefore, the issue of diligent prosecution in relation to those claims and violations to which the state action pertained will not be presently addressed.

## B. Wholly–Past Violations

Defendant Gibraltar maintains that "[t]his Court lacks subject matter jurisdiction over all allegations of Gibraltar violations which have occurred wholly in the past." Defendant Gibraltar's Motion for Judgment on the Pleadings, 7. For this proposition, it cites *Gwaltney of Smithfield v. Chesapeake Bay Foundation,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987).

In *Gwaltney,* the Supreme Court held that federal courts lack jurisdiction over "wholly past violations" under the Clean Water Act ("CWA"). *Id.* at 57, 108 S.Ct. at 381. The Court based its conclusion on an analysis of the citizen suit provision in the CWA, which authorizes a citizen suit against a defendant who is alleged to be in violation of the act. *Id.* The Court held that jurisdiction is proper under this provision, if the plaintiff makes a good faith allegation of continuous or intermittent violations. *Id.* at 64, 108 S.Ct. at 385.

Initially, *Gwaltney* had a significant impact in CAA actions, because the Clean Air Act's citizen suit provision mirrored the Clean Water Act's citizen suit provision. *See Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 57, 108 S.Ct. 376, 381, 98 L.Ed.2d 306 (1987); *Friends of the Earth v. Consolidated Rail Corp.,* 768 F.2d 57, 63 (2nd Cir.1985). However, the applicability of *Gwaltney* to CAA claims was limited by Congress when it amended the CAA in 1990. Daniel Riesel, *Citizen Suits and the Award of Attorneys' Fees In Environmental Litigation,* C921 A.L.I.–A.B.A. 1073, 1126 (1994). The 1990 amendments to the CAA add a basis for citizen suit jurisdiction: a civil action for wholly past violations may be com-

menced, if the plaintiff alleges that the violations have been repeated. Clean Air Act, Amendments of 1990, Pub.L. No. 101–549, sec. 707(g), § 304(a), 104 Stat. at 2683; *see also* The Honorable Henry A. Waxman, *An Overview of the Clean Air Act Amendments of 1990,* 21 Envt'l Law 1721, 1816 (1991). The amendments to the CAA, therefore, "effectively reversed the holding in *Gwaltney.*" Riesel, *supra.* As a result, plaintiffs may maintain a citizen suit against defendant Gibraltar, if they have sufficiently alleged continuous or intermittent violation of the CAA in such manner as to satisfy section 7604(a)(1), *i.e.,* when the plaintiffs have alleged that the defendants are "in violation of" the CAA *or* when they have alleged a past violation which has been repeated. 42 U.S.C. § 7604(a)(1).

Plaintiffs have sufficiently alleged continuous or intermittent violations of the CAA by defendant Gibraltar; hence, this action is proper under the second clause of section 7604(a)(1). Plaintiffs' First Amended Complaint, 1. Moreover, a genuine issue is present concerning the continuousness or intermittence of the alleged CAA violation. *See Gwaltney,* 484 U.S. at 66, 108 S.Ct. at 386. Consequently, summary judgment is inappropriate.

Alternatively, jurisdiction is proper for wholly past violations, if the plaintiffs allege the violations have been repeated. 42 U.S.C. § 7604(a)(1). Plaintiffs allege that many of the past violations have been repeated, identifying numerous dates of the alleged violations. Moreover, because the first amended complaint alleges that violations are continuous or intermittent, the allegations which do not enumerate multiple violations satisfy the requirement that the plaintiffs allege the violation has been repeated. *See* Plaintiffs' First Amended Complaint, 1. Furthermore, there is a genuine issue regarding whether these past violations, in fact, have been repeated. Therefore, the plaintiffs satisfy this alternative basis for jurisdiction and, necessarily, summary judgment is inappropriate.

RCRA has not been amended in a manner similar to the CAA; thus, *Gwaltney*'s applicability to the RCRA claims has not been diminished. But, the plaintiffs have sufficiently alleged that defendant Gibraltar's RCRA violations are continuous or intermittent. Plaintiffs' First Amended Complaint, 1. Further, there is a genuine issue of material fact concerning this allegation, thereby precluding the issuance of summary judgment in favor of defendant Gibraltar.

### C. Non–Repeated Violations

Defendant Gibraltar contends that this court lacks jurisdiction over the plaintiffs' CAA claims which arose before the effective date of the amendment to section 7604(a)(1) and are not alleged to have been repeated. This argument hinges on the assumption that jurisdiction is not proper under the other bases of jurisdiction in section 7604(a)(1). Moreover, defendant Gibraltar's position rests on a misunderstanding of the 1990 amendments to the CAA.

As already described in section III.B., the complaint clearly alleges "repeated and continuous violations" of the CAA, and, thus, satisfies the requirements of *Gwaltney.* For these reasons, this court has jurisdiction over this action, regardless of the added grant of jurisdiction under section 7604(a)(1).

In any event, jurisdiction exists under the additional jurisdictional grant provided by the 1990 amendments to the CAA. "The amendment made to this subsection shall take effect with respect to *actions* brought after the date 2 years after the enactment of the Clean Air Act Amendments of 1990." Pub.L. No. 101–549, sec. 707(g), 104 Stat. 2683 (emphasis added); *see also* Riesel, *supra.* This action was commenced after the effective date of the amendments, November 15, 1992. *See* Plaintiffs' Original Complaint (filed September 4, 1994). Therefore, jurisdiction exists over the plaintiffs' claims under the provision of section 7601(a)(1) regarding past violations that the plaintiffs allege have been repeated.[3]

---

**3.** Plaintiffs have alleged that each of the violations have been repeated. In many instances, plaintiffs have done so explicitly by enumerating various dates of the alleged violation. Notwithstanding that these claims do not identify numerous dates of violation, they sufficiently satisfy the

## D. Imminent and Substantial Endangerment Claim

■ Defendant Gibraltar claims that the plaintiffs are precluded from bringing suit under section 6972(a)(1)(B), in that it has a valid permit issued in accordance with RCRA. Defendant Gibraltar's Motion for Summary Judgment, 9. Defendant Gibraltar relies on *Greenpeace v. Waste Technologies Indus.*, 9 F.3d 1174 (6th Cir.1993) and *Palumbo v. Waste Technologies, Inc.*, 989 F.2d 156 (4th Cir.1993), to support its contention.

■ Defendant Gibraltar misinterprets *Greenpeace.* In *Greenpeace*, the court held that "the authority given citizens under § 6972(a)(1)(B) to sue any person does not extend to persons operating hazardous waste facilities in compliance with valid RCRA permits." 9 F.3d at 1181. The court reasoned that to allow a plaintiff to bring such an action would constitute an impermissible challenge to EPA's permitting decision. *Id.* The court based its conclusion on section 6976(b), which discusses judicial review of permitting decisions,[4] and section 6972(b)(2)(D), which states that "[n]o action may be commenced under subsection (a)(1)(B) of this section by any person ... to restrain or enjoin the issuance of a permit for such facility." *Id.;* 42 U.S.C. § 6972(b)(2)(D).

*Greenpeace*'s holding does not necessarily compel the conclusion that, because defendant Gibraltar holds a valid permit, plaintiffs' claims against it under section 6972(a)(1)(B) are barred. Rather, *Greenpeace* merely precludes an attack on a previous permitting decision. Plaintiffs' section 6972(a)(1)(B) claim is not a collateral attack on a previous permitting decision; instead, it is an attack on the operation of a facility in a manner inconsistent with the permits issued.

Defendant Gibraltar's reading of *Greenpeace*, that a plaintiff may not maintain an action against any defendant holding a permit under section 6972(a)(1)(B), is unfounded. Section 6972(a)(1)(B) does not expressly prohibit an action against a permitted entity. *See* 42 U.S.C. § 6972(a)(1)(B). Moreover, reading in such a limitation is inappropriate, taking into consideration the expansive language of section 6972(a)(1)(B), which prefaces the standard of liability by the word "may." *Dague*, 935 F.2d at 1355. As the Second Circuit stated in *Dague*, the language of section 6972(a)(1)(B) suggests that Congress intended to confer jurisdiction necessary to eliminate *any* risk posed by toxic waste. *Id.* Adopting the interpretation of *Greenpeace* posited by defendant Gibraltar would be contrary to the language and apparent congressional intent relating to claims brought under section 6972(a)(1)(B).

Rejecting defendant Gibraltar's interpretation of *Greenpeace* does not undermine its rationale. That is, the plaintiffs shall not be permitted to relitigate the issuance of the permits to defendant Gibraltar; on the contrary, they may only challenge the operation of the facility when, in violation of its permit, it operates in a manner that endangers health or the environment.

## E. EPA–Authorized State–Operated Hazardous Waste Program

■ Defendant Gibraltar claims that "RCRA may not be used to enforce EPA-authorized state hazardous waste programs in suits under 42 U.S.C. § 6972(a)(1)(A)." Defendant Gibraltar's Motion for Judgment on the Pleadings, 8. The validity of defendant Gibraltar's argument depends on section 6972(a)(1)(A), which states, in relevant part, that "any person may commence a civil action on his own behalf ... against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, or order which *has become effective pursuant to this Act.*" 42 U.S.C. § 6972(a)(1)(A) (emphasis added). Section 6972(a)(1)(A) suggests that the primary ques-

requirement that the plaintiffs allege that such violation has been repeated. In this regard, the plaintiffs generally allege that all past violations have been repeated. *See* Plaintiffs' First Amended Complaint, 1.

**4.** A plaintiff may only challenge a permitting decision by appealing such decision to the Administrator of the EPA, and then to the appropriate United States Court of Appeals. *Greenpeace*, 9 F.3d at 1180. The Court of Appeals reviews the permitting decision in accordance with 5 U.S.C. §§ 701–706. *Id.*

tion is whether Texas' hazardous waste program became effective pursuant to RCRA. *Sierra Club v. Chemical Handling Corp.*, 824 F.Supp. 195, 197 (D.Colo.1993); *Lutz v. Chromatex*, 725 F.Supp. 258, 261–62 (M.D.Pa.1989).

 RCRA permits the Environmental Protection Agency ("EPA") to authorize individual states to administer hazardous waste programs "in lieu" of the federal program as long as the two programs are equivalent. 42 U.S.C. 6926(b); *Sierra Club*, 824 F.Supp. at 197. In such delegated programs, states are authorized to issue and enforce permits for the storage, treatment, or disposal of hazardous waste. *Sierra Club*, 824 F.Supp. at 197. The EPA has authorized Texas to administer its hazardous waste program in lieu of the federal program, in accordance with section 6929(b). 49 Fed.Reg. 48,300 (Dec. 12, 1984) (to be codified at 40 C.F.R. §§ 272.2200—272.2249).[5] Because Texas' hazardous waste program is authorized by RCRA, it became effective pursuant to RCRA. *Sierra Club*, 824 F.Supp. at 197; *Lutz*, 725 F.Supp. at 261; *Acme Printing Ink Co. v. Menard*, 881 F.Supp. 1237, 1237 (E.D.Wis.1995); *but see Dague*, 935 F.2d at 1353; *City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp. 971, 978–79 (S.D.Ohio 1993); *Thompson v. Thomas*, 680 F.Supp. 1, 3 (D.D.C.1987). Therefore, the plaintiffs may enforce Texas' hazardous waste program by bringing a citizen suit under section 6972(a)(1)(A).

EPA's interpretation of RCRA is consistent with the interpretation of *Sierra Club*, *Lutz*, and this court. During the approval process of the Texas hazardous waste program, EPA stated that a RCRA citizens suit could be maintained under section 6972 after Texas' program was authorized.

Citizen suit provisions of RCRA are found in Section 7002(a) (Subtitle G). Section 3006(b) requires that State programs be "equivalent to the federal program under this subtitle." . . . Section 3006 is in subtitle C of RCRA.

EPA cannot require a State to provide for citizen suits as is contained in RCRA. *However, it is EPA's position that the citizen suit provision of RCRA is available to all citizens whether or not a state is authorized.*

49 Fed.Reg. 48300, 48304 (Dec. 12, 1984) (emphasis added); *see also id.* at 48301 ("any person may, under Section 7002 of RCRA, commence a civil action on his own behalf").

### F. State Regulation

Defendant Gibraltar claims that, even if the Texas hazardous waste program is enforceable under RCRA in some circumstances, it is not in this instance, since the Texas program is broader in scope than the federal program. Additionally, defendant Gibraltar, without explanation, claims that the plaintiffs' complaint alleges violations of state limitations and standards that are greater in scope than the CAA, and, therefore, are unenforceable under the CAA. Defendant Gibraltar's Motion for Judgment on the Pleadings, 11–12.

#### 1. RCRA Violations

RCRA establishes a scheme whereby a state may administer its own hazardous waste program in lieu of the federal program, if such state program is equivalent to, and consistent with, the federal program. 42 U.S.C. § 6926(b). A state program may be more stringent than the federal program, and, nevertheless, be enforceable under RCRA. 40 C.F.R. § 271.1(h)(i)(1). However, if the state program has a "greater scope of coverage than required by federal law, the additional coverage is not part of the Federally approved program." 40 C.F.R. § 271.1(h)(i)(2).

Defendant Gibraltar did not adequately brief this issue. Additional research is necessary, in order for the court to consider whether the Texas program is broader in scope than the federal program. Hence, if

---

**5.** EPA has authorized revisions to Texas' hazardous waste program. These various authorizations may be found at 50 Fed.Reg. 11858 (March 26, 1985), 51 Fed.Reg. 3952 (Jan. 31, 1986), 51 Fed.Reg. 45320 (Dec. 18, 1986), 54 Fed.Reg. 5500–02 (Feb. 3, 1989), 55 Fed.Reg. 7318 (Mar. 1, 1990), 55 Fed.Reg. 21383 (May 24, 1990), 56 Fed.Reg. 41626–02 (August 22, 1991), 57 Fed. Reg. 45719 (Oct. 5, 1992), 59 Fed.Reg. 16987 (April 11, 1994), and 59 Fed.Reg. 17273 (April 12, 1994).

defendant Gibraltar desires the court to further consider this issue, it shall file a brief highlighting the appropriate standard to make such determination and specifying those portions of the state program which are allegedly broader in scope than the federal program. After such brief is filed, plaintiffs shall respond within the time period provided by the rules of this court.

### 2. CAA Violations

Defendant Gibraltar, relying on *Atlantic States Legal Foundation v. Eastman Kodak Co.*, 12 F.3d 353, 358–59 (2nd Cir.1993), *cert. denied*, ‒‒ U.S. ‒‒‒‒, 115 S.Ct. 62, 130 L.Ed.2d 19 (1994), argues that the Texas SIP may not be enforced, inasmuch as it incorporates emission standards and limitations which are broader in scope than the CAA. *Atlantic States* does not support defendant Gibraltar's conclusion, since it is easily distinguishable. Specifically, *Atlantic States* did not involve a CAA claim; rather, it concerned a CWA claim. This is significant, because the court's conclusion rested on 40 C.F.R. § 123.1(i)(2), which states that state programs broader in scope than the federal requirement are not a part of the federal program. *Id.* No equivalent regulation has been promulgated concerning the CAA. *Cf.* 40 C.F.R. § 271.1(h)(i)(2) (similar provision concerning RCRA).

■ Defendant Gibraltar's underlying point is meritorious, nonetheless. The CAA gives any person authority to bring a civil action on his or her own behalf "against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of . . . an emission standard or limitation under [the CAA]." 42 U.S.C. § 7604(a)(1). An emission standard or limitation is

> any other standard, limitation, or schedule established under any permit issued pursuant to title V or *under any applicable State implementation plan approved by the Administrator*, any permit term or condition, and any requirement to obtain a permit as a condition to operations, which is in effect under the Act . . . or under an applicable implementation plan.

42 U.S.C. § 7604(f)(4) (emphasis added). Therefore, the CAA makes it clear that only in certain circumstances may a state standard or limitation be enforced through 42 U.S.C. § 7604(a)(1). 42 U.S.C. § 7604(a)(1) and (f)(4); *see also* 40 C.F.R. § 52.21(b)(17). In those circumstances, the state standard and limitation may be enforced through the citizen suit provision of the CAA. 42 U.S.C. § 7604(a)(1) and (f)(4); 40 C.F.R. § 52.21(b)(17). In this action, defendant Gibraltar did not demonstrate that the alleged violations of Texas standards are unenforceable.

■ Moreover, Texas standards or limitations incorporated into its approved SIP may be enforced by the plaintiffs, even if such standards are more stringent than federal requirements. *Union Electric Co. v. EPA*, 427 U.S. 246, 265, 96 S.Ct. 2518, 2529, 49 L.Ed.2d 474 (1976) (a SIP may be more stringent than federal requirements).

### G. Notice

Both RCRA and the CAA require a plaintiff to give notice of an alleged violation prior to commencing a citizen suit. In *Hallstrom v. Tillamook*, 493 U.S. 20, 31, 110 S.Ct. 304, 311, 107 L.Ed.2d 237 (1989), the Supreme Court held that section 6972(b)'s notice and delay requirements are "mandatory conditions precedent to commencing suit under the RCRA citizen suit provision." The Court warned that "a district court may not disregard these requirements at is discretion." *Id.* The RCRA notice provision discussed in *Hallstrom* was modeled after the notice provision in the CAA, 42 U.S.C. § 7604. *Id.* at 23, 110 S.Ct. at 307; *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1353 n. 3 (9th Cir.1995). Hence, *Hallstrom*'s lesson is equally applicable to the court's analysis of plaintiffs' notice of their CAA claims.

### 1. CAA Violations

The CAA requires a plaintiff to give notice of an alleged violation prior to commencing a citizen suit. 42 U.S.C. § 7604(b)(1)(A) states, in relevant part:

> No action may be commenced under subsection (a)(1) of this section prior to sixty days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to

the State in which the violation occurs, and (iii) to any alleged violator....

42 U.S.C. § 7604(b)(1)(A).

Defendant Gibraltar claims that this court does not have jurisdiction over the violations noticed on August 2 and 17, 1994, by reason of the fact that this action was commenced less than sixty days after such notices. Additionally, defendant Gibraltar maintains that the violations contained in ¶¶ 39(fn), 50(e), 62–64, and 82–86 of the original complaint[6] occurred after the last date proper notice could be given. Defendant Gibraltar argues, therefore, that the claims in the above-referenced paragraphs are barred.

In order to resolve whether the plaintiffs' notice was adequate, it must initially be ascertained when this action was commenced. Plaintiffs argue that the date the amended complaint was filed constitutes the date the action was commenced. Plaintiffs' argument is correct in some circumstances and incorrect in others: an action is commenced as to a particular claim when a complaint is filed that includes it.

Normally, an action is commenced when an original complaint is filed. *See* Fed.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court."). However, in certain instances, the filing of an amended complaint constitutes the commencement of an action. As indicated above, an action is commenced concerning those claims which were not present in the original complaint, when an amended complaint containing them is filed.

These conclusions are supported by *Zands v. Nelson,* 779 F.Supp. 1254 (S.D.Cal.1991). In *Zands,* the court held that notice given more than ninety days prior to the filing of an amended complaint that alleged a specific violation for the first time was a sufficient notice of the violation. *Id.* at 1259. The court reasoned that when an amended complaint was filed which contained a claim presented for the first time, the action was commenced at that time. *Id.; see also City of Heath, Ohio v. Ashland Oil, Inc.,* 834

F.Supp. 971, 984 (S.D.Ohio 1993) (*Zands'* holding followed concerning the filing of an amended complaint).

*Zands* did not pass upon the question of whether, if the plaintiffs failed to give proper notice of a particular claim present in their original complaint, but gave notice of such claim prior to the filing of an amended complaint including it, that claim could be validly maintained. In fact, the court expressly distanced itself from this holding: "[T]his case does not present the more difficult situation where a claim is in the initial complaint, notice is given, and the same claim is in the amended complaint." *Id.* at 1258.

The plaintiffs sent their first notice to defendant Gibraltar on April 27, 1994. This notice was sent more than sixty days prior to the commencement of this action on September 6, 1994. Consequently, the claims noticed on April 27, 1994, are not barred by section 7604(b)(1)(A).

The August 2 and 17, 1994, notices were sent to defendant Gibraltar less than sixty days prior to the filing of the original complaint, but more than sixty days prior to the filing of the first amended complaint. Accordingly, the claims present in the original complaint which are not identified in the April 27, 1994, notice are barred because the notice was improper, *i.e.,* it was given less than sixty days prior to the commencement of this action. The August 2 and 17, 1994, notices are sufficient regarding the claims appearing in the first amended complaint which were not present in the original complaint, for the reason that such notices were given more than sixty days prior to commencement of the action respecting those claims.

The allegations in ¶¶ 48(fn) and 65–69 were identified in the original complaint, but were not noticed in the April 27, 1994, notice. Therefore, plaintiffs may not maintain an action as to these alleged violations. The violations asserted in ¶¶ 72–74 were not noticed on April 27, 1994, but were present, in

---

**6.** The paragraph numbers in the First Amended Complaint do not correspond with the paragraph numbers in the Original Complaint. *Cf.* Plaintiffs' First Amended Complaint *with* Plaintiffs'

Original Complaint. After examining the pleadings, as well as defendant AEESC's argument, it is clear that defendant AEESC is complaining about ¶¶ 48(fn), 59(e), 72–74, and 92–96.

substance, in the original complaint. Therefore, these allegations were not properly noticed and must be dismissed.

The allegation in ¶ 70 was not contained in the April 27, 1994, notice. Moreover, it was not alleged in the original complaint, but was added by the first amended complaint. Therefore, the claim may be maintained, since notice was given more than sixty days before the action was commenced respecting this claim.

■■■ The allegations contained in ¶¶ 48(fo-fq) and 49(dd) were not present in the original complaint. Thus, the action commenced with regard to these claims when the amended complaint was filed. Nevertheless, ¶¶ 48(fo-fq) and 49(dd) were not properly noticed and must be dismissed, inasmuch as the alleged dates of violation are after the date the last notice was given.

Defendant Gibraltar additionally claims that the plaintiffs' notices are inadequate under 40 C.F.R. § 54.3(b). Section 54.3(b) states, in relevant part,

Notices to the Administrator, States, and alleged violators regarding violation of an emission standard or limitation or an order issued with respect to an emission standard or limitation shall include [1] sufficient information to permit the recipient to identify the specific standard, limitation, or order which has allegedly been violated, [2] the activity alleged to be in violation, [3] the person or persons responsible for the alleged violation, [4] the location of the alleged violation, [5] the date or dates of such violation, and [6] the full name and address of the person giving notice.

40 C.F.R. § 54.3(b). The notices sent by the plaintiffs are sufficient under 40 C.F.R. § 54.3(b).

### 2. RCRA Violations

■■■ RCRA contains an analogous provision which relates to permit violation claims asserted pursuant to section 6972(a)(1)(A).

No action may be commenced under subsection (a)(1)(A) of this section prior to sixty days after the plaintiff has given notice of the violation to (i) the Administrator; (ii) the State in which the alleged

violation occurs; and (iii) to any alleged violator ..., except such an action may be brought immediately after such notification in the case of an action under this section respecting a violation of subtitle C of this Act [42 U.S.C. § 6921 *et seq.*]."

42 U.S.C. § 6972(b)(1)(A). RCRA also contains a notice provision which requires ninety days notice prior to filing suit alleging an imminent and substantial endangerment claim pursuant to section 6972(a)(1)(B).

"No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to (i) the Administrator; (ii) the State in which the alleged endangerment may occur; and (iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous was referred to in subsection (a)(1)(B), except such an action may be brought immediately after such notification in the case of an action under this section respecting a violation of subtitle C of this Act [42 U.S.C. § 6921 *et seq.*]."

42 U.S.C. § 6972(b)(2)(A).

The United States Court of Appeals for the Second Circuit, in *Dague v. City of Burlington,* 935 F.2d 1343, 1350–51 (2nd Cir. 1991), *rev'd in part on other grounds,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), addressed the RCRA exceptions to the general notice requirements. Section 6972(b)(1)(A) and (b)(2)(A) state that an action may be commenced immediately after notification, if such action is brought under subtitle C of RCRA, 42 U.S.C. § 6921 *et seq.* Interpreting these exceptions, *Dague* held that if the action was brought under section 6921 *et seq.,* the plaintiff need not wait sixty days from the date of notice until the action is filed. *Id.* at 1351.

Additionally, *Dague* confronted the more difficult question, specifically, whether the plaintiff must wait sixty days prior to filing suit after notice is given, when a citizen suit is commenced alleging violations of subtitle C, 42 U.S.C. § 6921 *et seq.,* as well as violations of other provisions of RCRA. *Dague* held that such a "hybrid" complaint could be

filed after notice is given, but before the sixty days expires, without running afoul of *Hallstrom. Id.* In other words, if one of the RCRA claims alleges a violation of subtitle C, 42 U.S.C. § 6921 *et seq.,* the plaintiff need not wait sixty days prior to filing suit, even though the complaint alleges other RCRA violations as well. *Id.; see also Zands,* 779 F.Supp. at 1259–61; *but see Supporters To Oppose Pollution v. Heritage Group,* 760 F.Supp. 1338, 1340–42 (N.D.Ind.1991).

Claims for relief three and four, brought pursuant to section 6972(a)(1)(A), allege violations of subtitle C, 42 U.S.C. § 6921 *et seq.* In particular, claim for relief number three alleges a violation of Texas' hazardous waste program, which operates in lieu of subtitle C, 42 U.S.C. § 6921 *et seq.,* by reason of section 6929(b). Moreover, claim for relief number four alleges violations of the EPA regulations implementing subtitle C, 42 U.S.C. § 6921 *et seq.* Accordingly, a hybrid complaint was created, and the issue of whether claim for relief number five is also brought under subtitle C, 42 U.S.C. § 6921 *et seq.* need not be reached. For these reasons, claims for relief numbers three, four, and five are proper, in that notice was given prior to filing this action, although, in some instances, the delay period had not elapsed between the notice and the commencement of this action.

Defendant Gibraltar also claims that the plaintiffs' notices are inadequate when judged in accordance with 40 C.F.R. § 254.3(a), which states, in relevant part,

> Notice regarding an alleged violation of a permit, standard, regulation, condition, requirement, or order which has become effective under this Act shall include [1] sufficient information to permit the recipient to identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated, [2] the activity alleged to constitute a violation, [3] the person or persons responsible for the alleged violation, [4] the date or dates of the violation, and [5] the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 254.3(a). Plaintiffs' notices, judged under 40 C.F.R. § 254.3(a), are adequate.

## H. Statute of Limitations

Defendant Gibraltar maintains that this court lacks jurisdiction over certain alleged violations contained in the first amended complaint, inasmuch as such claims are barred by the statute of limitations, as set forth at 28 U.S.C. § 2462. Section 2462, which provides for a five year statute of limitations, is applicable to the plaintiffs' citizen suit against defendant Gibraltar. *See Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 75 (3rd Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991); *see also United States v. Walsh,* 8 F.3d 659, 662 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994).

Each alleged violation identified in the plaintiffs' original complaint that occurred more than five year before proper notice was given on April 27, 1994 (which tolls the running of the statute of limitations, *see Public Interest Research Group of New Jersey, Inc.,* 913 F.2d at 75), is barred by the statute of limitations. *See id.* at 73–75 & n. 15. Likewise, each alleged violation identified in the plaintiffs' first amended complaint which was not identified in the plaintiffs' original complaint and that occurred more than five years before notice on August 2 and 17, 1994, is barred by the statute of limitations. Hence, the following violations are barred by the statute of limitations: ¶¶ 46(a), 49(a), and 50(a).

An order incorporating the adjudications herein set forth shall be issued simultaneously with the issuance of this memorandum opinion.